**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-cv-21784-GAYLES/LOUIS

AUGUSTINO SANTIAGO, LILLY LEYVA,
GUILLERMO CREAMER, and
MARIA ACEITUNO, individually and as
Representative of a class of participants and
beneficiaries on behalf of the University of
Miami Retirement Savings Plan,

    Plaintiffs,

v.

UNIVERSITY OF MIAMI,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE comes before the Court upon Defendant University of Miami's Motion to Dismiss (ECF No. 16). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), by the Honorable Darrin P. Gayles, United States District Judge, to decide all pretrial matters (ECF No. 35). Plaintiffs filed a Response in Opposition (ECF No. 23) to which Defendant filed a Reply (ECF No. 32). The Parties have additionally filed multiple Notices of supplemental authority and responses thereto (ECF Nos. 33, 34, 37, 38 & 42). The Court heard oral argument on November 17, 2020. For the reasons set forth below, I **RECOMMEND** that Defendant's Motion to Dismiss be **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

Augustino Santiago, Lilly Leyva, Guillermo Creamer, and Maria Aceituno (collectively

"Plaintiffs") bring this putative class action, under 29 U.S.C. § 1132(a)(2) and (3), against the University of Miami ("the University") for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1). *See* Complaint (ECF No. 1).

The University offers a defined-contribution retirement plan (the "Plan") to its employees under 26 U.S.C. § 403(b)(1)(A).[1] Eligible faculty and staff members may elect to participate in the Plan, which provides the primary source of retirement income for many employees (*id.* ¶ 12). The University chooses the investment options for the Plan; participants select among the available options in which to direct their contributions (*id.*). The named Plaintiffs are each Plan participants.

The University is the Plan Administrator and is a fiduciary to the Plan; the University controls management of the Plan (*id.* at ¶ 19-20). Recordkeeping is, Plaintiffs conceded, a necessary service for this and every defined contribution plan, and recordkeeping fees incurred by the Plan are ultimately borne by the participants. Plaintiffs allege that prudent fiduciaries employ a number of approaches to ensure that those fees are kept reasonable (*id.* at ¶ 22). Methods employed by prudent fiduciaries include: soliciting competitive bids at regular intervals; negotiating recordkeeping fees based on a fixed dollar amount per participant (as compared to a percentage of the plan assets); monitoring revenue sharing arrangements, through which a recordkeeper receives additional compensation from a fund or other investment vehicle; and requiring rebates of excessive revenue sharing compensation to the plan (*id.* at ¶ 25). Finally, Plaintiffs allege that limiting recordkeeping services to a single recordkeeper avoids duplication of services and ensures reasonable fees paid by participants.

---

[1] A defined-contribution retirement plan "mean[s] that participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1825 (2015).

Plaintiffs bring this three-count Complaint alleging that the University breached its fiduciary duties of loyalty and prudence to the Plan and its participants (ECF No. 1). In Count I, Plaintiffs claim that the University permitted the Plan to incur unreasonable and excessive administrative fees by failing to engage in a prudent process to evaluate and monitor administrative expenses, such as fees paid to record keepers (*id.* at ¶¶ 34-37, 39, 40, 102, 104). Plaintiffs claim in Count II that the University failed to prudently select and monitor investment options, and that its failure permitted expensive and underperforming investment vehicles to incur excessive fees and losses incurred by the Plan participants. In particular, Plaintiffs challenge Defendant's retention of CREF Stock Account and TIAA Real Estate Account; two historically underperforming investments (*id.* at ¶¶ 55, 56, 62, 76-78, 112). In Count III, Plaintiffs allege that the University breached its duty to monitor appointed fiduciaries and service providers to the Plan, thereby causing the Plain to incur unreasonable fees and losses (*id.* at ¶¶ 41, 57, 118-19).

The University moved to dismiss the Complaint in its entirety for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant to 12(b)(1) of the Federal Rules of Civil Procedure (ECF No. 16). The University primarily disputes the facts alleged in the Complaint, attaching 17 exhibits to support its denials with regard to the number of record keepers paid and amount of fees paid per participant. On Count II, Defendant argues that Plaintiffs lack standing to bring claims premised on the University's retention of the contested investment vehicles named in the Complaint, because no named Plaintiff invested in either option and thus can assert no injury resulting from the retention of either fund. The University also presents evidence to refute the allegations that it offered too many investment options, offering to show that the true number of investment options is less than Plaintiffs allege. The University finally attacks Count III as merely derivative of their other claims and subject to dismissal on the same grounds; moreover, the claim

fails, Defendant argues, because the Complaint fails to allege any facts about the appointees sufficient to support a claim for failure to monitor the appointees.

Plaintiffs contest the University's reliance on exhibits to support its Motion, arguing that the Court is limited to the four corners of the Complaint at this posture and cannot convert the subject Motion into a motion for summary judgment (ECF No. 23 at 13). Moreover, Plaintiffs argue that the facts alleged are sufficient to support their claims for breach of the duty of prudence, because the claims challenge the process the University follows that results in the excessive fees incurred by record keepers for the Plan at the expense of its participants. In defense of their standing, Plaintiffs assert that as Plan participants, they have standing to bring claims challenging the University's management of the plan even if none of the named Plaintiffs have personally been harmed particularly by the funds underlying their prudence claims.

In its Reply, Defendant avers that Plaintiff's failure to rebut its factual denials are implicit concessions on these disputed facts and otherwise reiterates arguments advanced in the Motion.

## II. STANDARD OF REVIEW

### a. Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the reviewing court is limited to the facts contained in the complaint and any attached exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The facts alleged are taken as true and all reasonable inferences are drawn in plaintiffs' favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A plaintiff successfully presents a plausible claim for relief when he pleads facts that, if true, allow a reasonable inference that the defendant is liable for the misconduct

alleged. *Id.*

A failure to plead factual allegations pertaining directly to defendant's knowledge, methods, or investigations at the relevant times is not fatal if the complaint alleges that the defendant's process was flawed. *See Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *3 (S.D.N.Y. Aug. 25, 2017). ERISA affords such leeway because at the pleading stage, plaintiffs generally lack the inside information necessary to make out their claims in specific detail until discovery commences. *Id.*

### b. ERISA Fiduciary Duties

"ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Perez v. Commodity Control Corp.*, No. 1:16-CV-20245-UU, 2016 WL 11638303, at *5 (S.D. Fla. May 4, 2016) (quoting *Herman v. NationsBank Trust Co., (Georgia)*, 126 F.3d 1354, 1361 (11th Cir. 1997)). Courts are instructed to engage in "careful, context-sensitive scrutiny of a complaint's allegations" when deciding a motion to dismiss. *Id.*

ERISA § 404(a)(1) imposes twin duties of prudence and loyalty on fiduciaries of retirement plans. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." ERISA § 404(a)(1)(A). The duty of loyalty prohibits trustees from engaging in transactions that involve self-dealing or that otherwise involve or give rise to conflict between the fiduciary duties and personal interests. *See Sacerdote*, 2017 WL 3701482, at *3 (citing *Pegram v. Hedrich*, 530 U.S. 211, 224 (2000) ("Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and

must exclude all selfish interest and all consideration of the interests of third persons.")).

The duty of prudence mandates a pension plan fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B). The "prudent person" standard requires review of whether "the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Sacerdote* 2017 WL 3701482, at *4. Additionally, the prudence standard is an objective one, and the fiduciary's own lack of experience or good faith efforts do not excuse a failure to act with act with the care, skill, prudence, and diligence required under the circumstances. *Id*.

### III. DISCUSSION

#### a. Duty of Loyalty Claims Under ERISA Under § 404(A)(1)(B)

In all three Counts, Plaintiffs allege breaches of both the duties of loyalty and of prudence. Although Plaintiffs alleged both in single counts, these are separate claims with distinct elements as described above. *See Sacerdote*, 2017 WL 3701482, at *4 (analyzing claims for breach of duty of loyalty separately from those arising from breach of duty of prudence even though plead in same count). With respect to the fiduciary duty of loyalty, Plaintiffs have not alleged sufficient facts to show that the University acted for the purpose of benefiting third parties or themselves, and have failed to state any claim that the University breached this duty. *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062, 1063 (M.D. Tenn. 2018). Indeed, at oral argument, counsel for Plaintiffs conceded this deficiency and withdrew the claims alleging breach of the duty of loyalty. Accordingly, I recommend that the Motion be granted and the claims for breach of the duty of loyalty in Counts I, II, and III be dismissed.

### b. Duty of Prudence Claims Under ERISA § 404(A)(1)(B)

1. **Count I**

In Count I, Plaintiffs allege that the University breached the duty of prudence by failing to engage in a prudent process for evaluating and monitoring fees being charged to the Plan for administrative expenses, particularly record keeping fees. Illustrative of Defendant's imprudence, Plaintiffs allege that Defendant (1) contracts with six record keepers for the Plan's administrative services, thus incurring duplicative fees; (2) allowed revenue sharing by the record keepers; and (3) failed to implement a competitive bidding process between record keepers (ECF No. 1 ¶¶ 34-36, 39, 40). Plaintiffs contend that these actions and omissions resulted in the Plan incurring excessive and unreasonable administrative fees, noting that Plan Participants each paid over $100 in record keeping fees, claiming that a fee of $35 is reasonable.

The question of "whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss." *Cassell* 285 F. Supp. 3d at 1064. Defendant's Motion to Dismiss is illustrative of the fact-intensive inquiry necessary to resolve this dispute, which is more appropriate on a motion for summary judgement. For example, the University contends that contrary to Plaintiffs' allegations that the University uses six record keepers, it actually only uses one "master recordkeeper,"[2] Fidelity, to act as record keeper for the majority of investment options (except for TIAA investments for which TIAA acts as the record keeper). To disprove Plaintiffs' claim, the University relies on the agreement between Fidelity Investment and the University, which it attached to its Motion (ECF No. 16-7). Plaintiffs had opposed any reliance on exhibits attached to Defendant's Motion as outside the Complaint,[3]

---

[2] This not a term Defendant undertakes to define or explain but rather seems to be of Defendant's own designation, and implies that Fidelity is its primary record keeper.

[3] The Eleventh Circuit has recognized the incorporation by reference doctrine which permits courts to consider documents attached to a motion for dismiss without converting the motion into one for summary judgment, only if the

but has no objection to the Court's consideration of certain exhibits argued at the hearing; for example, Exhibit G (ECF No. 16-8), a Form 5500 for 2018, which discloses multiple record keepers: Fidelity, VALIC, TIAA, and Lincoln National (ECF No. 16-8 at 20-27). The Court cannot resolve these factual disputes at this posture.

Alternatively, the University argues that Plaintiffs have failed to state a claim because ERISA does not require a sole record keeper or mandate a specific record keeping contract, relying on *Divane v. Nw. Univ.*, 953 F.3d 980, 990 (7th Cir. 2020). There, the appellate court affirmed the district court's finding that plaintiffs had not stated a claim for breach of duty of prudence for retaining two record keepers. *Id.*. The court recognized that ERISA did not require the fiduciary to retain only one record keeper and explained "[t]o the extent plaintiffs alleged Northwestern should have selected TIAA as its sole recordkeeper, that assertion also fails to state a claim for relief. Plaintiffs' amended complaint contains no allegation that plan participants would have been better off with TIAA as the sole recordkeeper. The complaint does not include Fidelity's recordkeeping costs, and it fails to allege that those costs are the reason for higher fees." *Id*.

By contrast, the Plaintiffs here allege that the University's retention of multiple record keepers has cost the participants unreasonable fees. Plaintiffs allege that it is well known that plans with multiple record keepers causes high investment and administrative costs and that the market rate for such fees are $35 per participant, and here, participants had paid an excess of $100 in fees (ECF No. 1 ¶ 37). Under the circumstances Plaintiffs have sufficiently stated a claim. *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1353 (N.D. Ga. 2017) (denying a motion to dismiss and

---

attached documents are central to the plaintiff's claims and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Within the context of ERISA cases, courts have reviewed documents outside the complaints, where plaintiffs referred to the documents in the complaints or the documents were "necessarily embraced by the pleadings, and their authenticity was not challenged. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 n.3 (8th Cir. 2020).

explaining that plaintiffs had sufficiently alleged a breach of fiduciary duty of prudence by alleging that "[d]efendants have continued to contract with *three* separate recordkeepers for the Plans: TIAA–CREF, Fidelity, and Vanguard. This inefficient and costly structure has caused Plan participants to pay excessive and unreasonable fees for Plan recordkeeping and administrative services.").

The University argues, relying on the custodial agreement between Fidelity and the University, that Plan participants are actually charged annual record fees in the amount of $39, which is not much more that what Plaintiffs allege would have been a reasonable record keeping fee and thus, Plaintiffs' claim should be dismissed. The Court need not wade into whether the documents on which Defendant relies for these factual assertions may be properly considered by the Court at this posture because even assuming it could, the exhibits do not conclusively show what Defendant has argued; while Defendant urges that the fees paid to Fidelity equates to $39 per participant, the actual fees paid *by participant* vary greatly.[4] For purposes of this Motion to Dismiss, Plaintiffs' allegations that the fees participants paid were unreasonable and excessive, taking into consideration the features of the Plan and other comparable plans, are taken as true and are sufficient to state a claim.

Plaintiffs allege several forms of procedural deficiencies with regard to the University's record keeping practices to further separate this case from *Divane*. Plaintiffs claim that the University failed to ensure that participants were not being overcharged for record keeping services through revenue sharing or to seek bids from other record keepers and both of which resulted in excessive fees to the Plan. "While ERISA does not dictate any particular course of action, it does require a fiduciary to exercise care prudently and with diligence," and Plaintiffs have met their

---

[4] Exhibit D to Defendant's Motion discloses that participants with a balance greater than $5,000 will be charged recordkeeping fees between $72-96 per year. *See* ECF. No. 16-5 at 5.

burden at this pleading stage with the allegations in this Complaint because they have alleged that the University's process is flawed. *See Sacerdote*, 2017 WL 3701482, at *8 (finding that plaintiffs had sufficiently alleged a claim for breach of fiduciary duty of prudence where they alleged defendants did not have systems in place for evaluating over charges or comparing different record keepers).

The University disputes Plaintiffs' allegations that the University permitted its record keepers to engage in revenue sharing, which acted as an indirect (and additional) source of compensation for record keepers and resulted in the Plan incurring excessive fees.[5] The University, citing the disputed custodial agreements, argues that Fidelity is required to return "virtually all" compensation received through revenue sharing and that TIAA's revenue sharing is capped at $5 per participant (ECF No. 16 at 8 n.15). Here, the University misconstrues Plaintiffs' claims: whether or not revenue sharing may be permissible, Plaintiffs allege that the University failed to monitor the asset-based revenue sharing by its various record keepers, which resulted in fees being paid that were unreasonable and excessive for this Plan and that, as a result, Plan participants collectively lost millions of dollars in the last six years. Allegations that a fiduciary's failure to ensure that recordkeepers charged appropriate fees and did not receive overpayments for their services is sufficient to state a prudence claim. *Sacerdote*, 2017 WL 3701482, at *10 (citing *Henderson*, 252 F. Supp. 3d at 1352). Moreover, and even assuming that the Court could rely on the custodial agreements, these facts remain in dispute andconflict with the Plan's 2018 Form 5500 that Defendant also attached to the Motion, which reveals that several record keepers received an undisclosed amount of indirect compensation (ECF No. 16-8 at 23-24).

Nor do the cases cited by the University bolster its argument that the Court should dismiss

---

[5] Revenue sharing "is a common method of compensation whereby the mutual funds on a defined contribution plan pay a portion of investor fees to a third party." *Henderson*, 252 F. Supp. at 1352.

10

Plaintiffs' revenue sharing claim.[6] For example, the University cites to *Tussey v. ABB Inc.*, 746 F.3d 327, 336 (8th Cir. 2014), however, its reliance is misplaced, as that case was decided after a *16 day bench trial*, not at the motion to dismiss stage; and although the appellate court recognized that revenue sharing is common and acceptable, the court affirmed, in part, the district court's finding that the defendants had breached their fiduciary duties through specific procedural failings, including revenue sharing, failing to determine whether record keeper's fees were competitive, and failing to use the plan's size as leverage to reduce fees, explaining that that when viewed together, the plaintiff's allegations amounted to a breach of fiduciary duty of prudence. *Id*.

Last, the University, citing to *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016), challenges Plaintiffs' claim that Defendant breached its duty of prudence regarding administrative fees by failing to solicit bids from other recordkeepers, pointing out that competitive bidding is not *per se* required under ERISA. Whether a failure to implement a competitive bidding system was imprudent is a fact-intensive question. *See, e.g.*, *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 800 (7th Cir. 2011) (holding "a trier of fact could reasonably conclude that defendants did not satisfy their duty to ensure that [recordkeeper's] fees were reasonable" where plan fiduciaries failed to solicit competitive bidding for more than fifteen years). Here, Plaintiffs allege that a competitive bid would have benefited the Plan or its participants by permitting the University to find recordkeepers who would offer similar services at a lower rate and that the administrative fees incurred as a result were unreasonable and excessive (ECF No. 1 ¶ 40). This may be distinguished from *White*, where the court noted that

---

[6] The University also cites to *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009), in support of its argument that Plaintiffs' revenue sharing claim should be dismissed. However, that case is inapposite, as the court there reviewed the issue of whether non-disclosure of revenue sharing constituted a breach of fiduciary duties. Here, Plaintiffs' claim is not that the University did not disclose revenue sharing by record keepers; rather, they allege that the University breached its fiduciary duties by permitting several record keepers to participate in revenue sharing resulting in the recordkeepers receiving more than they should have for their services.

plaintiffs did not allege that the competitive bidding system would have benefited the plan and its participants, or that the fees incurred were excessive. *White*, 2016 WL 4502808 at *14.

At this stage, Plaintiffs have met their pleading burden of alleging that a prudent fiduciary would have implemented a competitive bidding process and a failure to do so resulted in the Plan incurring excessive and unreasonable fees. *Sacerdote*, 2017 WL 3701482, at *8 (finding plaintiffs had stated a claim where they alleged that a competitive bidding process would have benefited the plan and its participants); *see also Henderson*, 252 F. Supp. 3d at 1353 ("[T]he plaintiffs' allegation of the absence of competitive bidding for the recordkeeping services was imprudent; therefore, the plaintiffs' claim is sufficient to state a claim for relief.").

For these reasons, I recommend that the Motion be denied regarding Plaintiff's prudence claims in Count I.

### 2. Count II

In Count II, Plaintiffs allege that the University failed to prudently select and evaluate Plan investment options. Plaintiffs allege that the University employs no screening process for the selection or retention of investment options included in the Plan, instead allowing the recordkeepers and third parties to include any investment vehicle they prefer, including those that compensate recordkeepers through uncapped revenue sharing agreements. Plaintiffs allege that, as a result, the Plan includes an unreasonable number of options, thereby shifting the burden of reviewing lengthy prospectuses and other investment information to the participants and permitting historically underperforming investment options to remain in the Plan.

The University contends that Plaintiffs have failed to state a claim that the University acted imprudently by offering underperforming investments (ECF No. 16 at 16). Particularly, the University argues that Plaintiffs do not have standing to challenge the offering of the CREF Stock

Account or TIAA Real Estate Account because it is undisputed that none of the Plaintiffs invested in either of those accounts. Defendant additionally challenges Count II with factual denials about the number of investment options offered by the Plan.

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies," and "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828(2020). To have standing, a plaintiff must therefore establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The three elements of Article III standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) ("How much evidence is necessary to satisfy [the standing requirement] depends on the stage of litigation at which the standing challenge is made.").

In putative class actions like the one before me, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Wilding*, 941 F.3d at 1124–25. Where, as here, the Plaintiffs seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to survive the University's Motion to Dismiss. *Id.* "In other words, if we have at least one individual plaintiff who has demonstrated standing, we do not need to consider whether the other ... plaintiffs have standing to maintain the suit." *Id*. at 1125 (internal quotations omitted).

To the extent Count II alleges an injury arising from the University retaining the underperforming vehicles CREF Stock Account and TIAA Real Estate Account, no named

13

Plaintiff has standing to assert that claim. To proceed with this claim, Plaintiffs must show some injury to at least one of them resulting from the Plan's offering of the CREF Stock Account and TIAA Real Estate Account. *Johnson v. Delta Air Lines, Inc.*, No. 1:17-CV-2608-TCB, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017). Beyond the bare assertion that Plan participants were harmed by the offering of underperforming investments, the Complaint does not explain how the offering of two funds in which they did not invest caused any of them a concrete injury.

The cases Plaintiffs cite in support of their argument that they have standing to challenge the offering of the two stocks are unpersuasive. For example, Plaintiffs cite to the opinion on a motion for class certification in *Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018), in which the district court found that plaintiffs had standing to challenge the offering and monitoring of several investment options even though the representative plaintiffs had only invested in some of those options. There, the court found that because the plaintiffs had alleged injury as to *some* of the investment options, they had standing to challenge those they had not invested in on behalf of the putative class, noting that "Defendants do not claim that any of the named Plaintiffs were invested in *none* of the allegedly imprudent funds." *Id*. at *3, n. 3. Contrary to Plaintiffs' asserted use of the case for support herein, the district court's finding on standing was not determined on the motion to dismiss and, in fact, standing was neither raised nor decided on the earlier motion to dismiss in that case. *See Cassell*, 285 F. Supp. 3d at 1070.

Similarly, in *Boley v. Universal Health Servs., Inc.*, No. CV 20-2644, 2020 WL 6381395, at *3 (E.D. Pa. Oct. 30, 2020),[7] the district court denied the defendant fiduciaries' argument that plaintiffs lacked standing to challenge several funds because not all plaintiffs had invested in them. The court there explained it was undisputed that every plaintiff had invested in *at least one* of the

---

[7] Plaintiffs did not cite this authority in their Response in Opposition but submitted it for the Court's consideration in a Notice of Supplemental Authority (ECF No. 37).

allegedly imprudent investment funds. *Id.* at *5; *see also Clark v. Duke University*, No. 1:16-CV-1044, 2018 WL 1801946, at *3 (M.D.N.C. Apr. 13, 2018) (finding that plaintiffs had standing to challenge the CREF Stock Account and TIAA Real Estate Account because it was undisputed that at least one of the plaintiffs had invested in that challenged fund). Here, the Complaint does not identify what funds Plaintiffs invested in, whether those are challenged as underperforming, and critically, Plaintiffs do not dispute that none of them invested in the purportedly underperforming funds that are named in the Complaint.

Plaintiffs' remaining claims in Count II allege that the University failed to employ the proper methods for making investment options resulting in harm to the Plan and its participants. However, Plaintiffs' failure to allege what harm was felt by any Plaintiff as a result of any particular investment vehicle is likewise detrimental to this claim. *See Sacerdote*, 2017 WL 3701482, at *10 (citing *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984)).

Although a plan's fiduciary cannot avoid liability by simply offering a very large number of investment options and then shifting to participants the burden of choosing among those options, Plaintiffs here have not alleged any facts to suggest the Plan or its participants have been harmed by the offering of too many investment options. *See Sacerdote*, 2017 WL 3701482, at *11. Although Plaintiffs allege that the University should not have offered so many investment options, they do not allege that participants, themselves included, were actually confused by the array of investment options, and thus, the claim cannot survive. Plaintiffs also allege that the University was imprudent by permitting the recordkeepers, like Fidelity and TIAA, to add "whatever" investments they wanted in the Plan without an independent review or selection by the University (ECF No. 1 ¶ 56). Plaintiffs claim that such failure harmed the Plan and its participants in that participants were not offered the best investment options. While ERISA requires fiduciaries to

monitor and remove imprudent investments, it does not require fiduciaries to limit the number of investment options. *Id.*; *see also Cassell*, 285 F. Supp. 3d at 1066 (dismissing claim arising from unreasonable investments finding absence of allegation of any specific harm to any specific person caused simply by the number of options available in the plan.). For these reasons, I recommend dismissal of this claim.

Relatedly, Plaintiffs allege that the University permitted two recordkeepers from TIAA and VALIC to offer a loan program that was not beneficial to the Participants. If a Participant seeks to borrow from TIAA or VALIC, they are required to borrow from those general accounts (as opposed to the participants independent account under each fund) and are required to transfer 110% of the amount of the loan into the general accounts (ECF No. 1 ¶ 48). The University challenges this claim in a footnote on the grounds that the Complaint does not connect those allegations to any of the counts alleged (ECF No. 32 at 8 n.10). Indeed, it is unclear how Plaintiffs relate their challenge to the loan program to a breach of prudence in the Complaint; in their response in opposition, Plaintiffs contend that the loan program resulted in excessive administrative fees (ECF No. 23 at 17), and at the hearing counsel for Plaintiff conceded that the loan program did not pertain to just one count, but rather was a "global issue" in the Plan. Because Plaintiffs have not alleged facts sufficient to explain how the loan program, including the requirement of borrowing directly from either fund harms the Participants, I recommend that this claim be dismissed.

### 3. Count III

Plaintiffs allege in Count III that the University breached its fiduciary monitoring duties by failing to monitor its delegates by: (1) not monitoring record keeper fees, particularly, compensation through revenue sharing; (2) not monitoring the manner record keepers added

investment options to the Plan; and (3) not monitoring the success of offered investment options, particularly, CREF Stock Account and TIAA Real Estate Account.

The University moves to dismiss Count III, on the grounds that the claim "is derivative of Plaintiffs' other claims and fails for the same reasons," and because Plaintiffs have not alleged any facts challenging the University's failure to monitor other person or entities responsible for administrating the Plan. Indeed, no such persons or entities are named in the Complaint; Plaintiffs allege only that Defendant breached its fiduciary monitoring duties by: failing to monitor its (unnamed) appointees; failing to monitor their (unidentified) process; and failing to remove the (unnamed) appointees whose performance was inadequate (in unspecified ways). This suggests Plaintiffs do not know whether Defendant in fact delegated its fiduciary duties or to whom. Plaintiffs allege no facts showing what process of monitoring other fiduciaries existed or how it was deficient; the Count should accordingly be dismissed. *Cassell*, 285 F. Supp. 3d at 1067.

## IV. RECOMMENDATIONS

For the aforementioned reasons, I **RECOMMEND** that the University's Motion to Dismiss (ECF No. 16) be **GRANTED in part and DENIED in part**; and that Plaintiffs be afforded leave to amend the Complaint.

A party shall serve and file written objections, if any, to this Report and Recommendation with Darrin P. Gayles, United States District Court Judge for the Southern District of Florida, by no later than **March 12, 2021**. S.D. Fla. L.R. 4(b) (Magistrate Judge Rules). Any response thereto shall be filed no later than **March 19, 2021**. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to

factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Respectfully Submitted in Miami, Florida this 1st day of March, 2021.

/s/ Lauren Louis
LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**