**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:20-cv-21784-DPG**

---

AUGUSTINO SANTIAGO, LILLY LEYVA,
GUILLERMO CREAMER, and MARIA
ACEITUNO, individually and as representative
of a class of participants and beneficiaries of
behalf of the University of Miami Retirement
Savings Plan,

Plaintiffs,

v.

UNIVERSITY OF MIAMI,

Defendant.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF THE PARTIES' CLASS ACTION SETTLEMENT**

Plaintiffs Augustina Santiago, Lilly Leyva, Guillermo Creamer, and Maria Aceituno ("Plaintiffs"), individually and on behalf of all others similarly situated, and the University of Miami (the "University" or "Miami") have entered into a Class Action Settlement (the "Settlement") which, subject to this Court's approval, would resolve all claims asserted in this ERISA lawsuit in exchange for a $1,850,000 cash payment and other meaningful non-monetary relief to the proposed Settlement Class.[1]

The proposed Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class Members, who are current or former participants in the University of Miami

---

[1] All capitalized terms used in this Motion that are not otherwise defined shall have the meanings provided in the Settlement Agreement.

Retirement Savings Plan and other defined contribution plans sponsored by Miami during the Settlement Class Period for which either Fidelity or TIAA-CREF (or both) serve or have served as an administrative service provider (collectively, "the Plans").[2] The proposed Settlement provides an immediate benefit to the Settlement Class in the form of a large cash payment. The Settlement also provides structural safeguards that will help to protect Settlement Class Members' retirement savings for years to come. The Settlement is the product of hard-fought litigation, which included substantial motion practice, discovery, the retention of knowledgeable and qualified experts who performed damage analyses, and arm's-length negotiations directed by a seasoned and respected mediator between experienced ERISA counsel. The benefits of the Settlement must be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and the proposed Settlement Class. The University mounted a vigorous defense at all stages of the litigation, and, but for the Settlement, would have continued to do so through all future stages of the litigation.

In evaluating the terms of the Settlement Agreement, Class Counsel have concluded that the benefits provided to the Settlement Class make the Settlement in the best interests of Settlement Class Members in light of, among other considerations: (1) the substantial monetary relief afforded to the Settlement Class; (2) the structural protections in the management of the Plans agreed to by the University, providing further benefits to Settlement Class Members; (3) the risks and uncertainties of complex litigation such as this action; (4) the expense and length of time necessary

---

[2] As defined in the Settlement Agreement, the Plans include the University of Miami Retirement Savings Plan, the Defined Contribution Retirement Plan for Faculty of the University of Miami, the University of Miami Hospital Retirement Savings Plan II, the University of Miami Hospital Retirement Savings Plan III, and the University of Miami Supplemental Retirement Annuity Program.  (Ex. A, Settlement Agreement § 2.27.)

to prosecute this action through trial, and appeals; and (5) the desirability of consummating the Settlement to provide prompt and certain recovery to the Settlement Class.

Moreover, the proposed Settlement Agreement requires the parties to retain an independent fiduciary, who will act on behalf of the Plans in reviewing the Settlement for purposes of determining whether to authorize Plaintiffs' Released Claims on behalf of the Plans and the Settlement Class.  (Ex. A, Settlement Agreement § 3.1.)  *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003).  This will provide another objective review to ensure the Settlement's fairness to the proposed Settlement Class.

For these reasons, and as explained further below, Plaintiffs respectfully submit this Unopposed Motion seeking entry of an Order that will (1) preliminarily approve the Settlement of the claims asserted in this action; (2) certify the proposed Settlement Class; (3) approve the form and manner of giving notice of the proposed Settlement and related matters to the Settlement Class; (4) appoint Class Counsel; and, (5) set a date for a hearing on final approval of the Settlement, the Plan of Allocation, and the motion for Plaintiffs' Attorneys' Fees and Expenses, and the motion for Plaintiffs' Compensation.  The proposed Preliminary Approval Order addressing each of these topics is included as Exhibit 2 to the Settlement Agreement filed herewith.

## I.    LITIGATION AND SETTLEMENT HISTORY.

### A.    The Complaint and Motion Practice.

On April 29, 2020, Plaintiffs filed a Complaint in this Court, Case No. 1:20-cv-21784-DPG.  (ECF No. 1.)  Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging that Miami breached its fiduciary duties relating to the management, operation, and administration of the Plans, and seeking to recover all

alleged losses resulting from each breach of duty under 29 U.S.C. § 1109(a), and other equitable relief.  (*See* ECF No. 1.)

More specifically, Plaintiffs filed a three-count Complaint alleging that Miami breached its fiduciary duties of loyalty and prudence to the Plans and their participants.[3]  (ECF No. 1.)  In Count I, Plaintiffs claimed that Miami permitted the Plans to incur unreasonable and excessive administrative fees by allegedly failing to engage in a prudent process to evaluate and monitor administrative expenses, including fees paid to Fidelity and TIAA-CREF for recordkeeping services those entities provided to the Plans. (*Id*. at ¶¶ 34-37, 39, 40, 102, 104.) Plaintiffs alleged in Count II that Miami failed to prudently select and monitor investment options, including the CREF Stock Account and TIAA Real Estate Account, resulting in losses to Plan participants caused by allegedly expensive and underperforming investment vehicles. (*Id*. at ¶¶ 55, 56, 62, 76-78, 112.) Finally, in Count III, Plaintiffs alleged that Miami breached its duty to monitor appointed fiduciaries. (*Id*. at ¶¶ 41, 57, 118-19.)

On July 8, 2020, Miami moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant Rule 12(b)(1). (ECF No. 16.) The University argued, among other things, that the Complaint failed to allege plausibly that Miami breached its duty of loyalty, that the Plans paid excessive administrative/recordkeeping fees, or that the University's process for evaluating investment options was deficient. (*Id*.) Plaintiffs filed their Opposition on August 7, 2020 (ECF No. 23), along with supporting documentation. The University filed a Reply (ECF No. 32) on September 4, 2020. Both sides also filed Notices of Supplemental

---

[3] The original complaint focused its allegations on the University's Retirement Savings Plan.  However, as a result of further investigation and the settlement reached during the parties' June 22, 2021 mediation, Plaintiffs have filed contemporaneously with this motion an Amended Complaint which expands the asserted claims to include all University retirement plans who received recordkeeping services pursuant to the same contracts with Fidelity and TIAA-CREF as the Retirement Savings Plan.  For simplicity, we refer to those plans collectively herein as the "Plans."  *See also infra* n.2.

Authority (ECF Nos. 37, 38, 42).   On November 17, 2020, Magistrate Judge Lauren Fleischer Louis held a hearing (conducted electronically) on the University's Motion, which lasted approximately 2 hours and 10 minutes.

On March 1, 2021, Magistrate Judge Louis issued a Report and Recommendation ("R&R"), recommending that Miami's motion to dismiss be granted as to Counts II and III of the Complaint and Plaintiffs' "duty of loyalty" claim in Count I, but that the motion be denied with respect to Plaintiffs' "duty of prudence" claim in Count I. (ECF No. 43.) This Court affirmed and adopted the R&R on March 26, 2021, ordering the case to proceed as to Plaintiffs' duty-of-prudence claim in Count I. (ECF No. 46.)

On April 5, 2021, Plaintiffs filed their Rule 23 Motion for Class Certification. (ECF No. 47.)  Soon thereafter, on April 23, 2021, Miami filed its Answer and Defenses. (ECF No. 52.) Miami raised eighteen (18) separate Defenses.

**B.**   **Discovery.**

Plaintiffs initiated discovery while motion practice was ongoing. They served document requests and interrogatories on the University, along with a Fed. R. Civ. P. 30(b)(6) deposition notice.  The University produced many documents central to the processes followed by the Plans' fiduciaries, which Class Counsel and their retained industry experts reviewed. The University also deposed each of the four named Plaintiffs. Plaintiffs also retained and worked with expert economic witnesses to develop damages models and to opine on alleged losses sustained by the named Plaintiffs and Settlement Class Members.

C.    <u>**Settlement Negotiations.**</u>

In May 2021, after the partial denial of Miami's Motion to Dismiss, counsel discussed whether a pre-trial class-wide resolution might be attainable.  Ultimately, the parties agreed to participate in a private mediation.

On June 22, 2021, the parties engaged in a full-day mediation with a nationally recognized mediator, David Geronemus, Esq., who has extensive experience handling ERISA fiduciary-breach lawsuits similar to this one.[4]  (*See* Decl. of Brandon J. Hill, ¶ 20.)  In advance of the mediation, the parties submitted mediation briefs, including damage analyses and settlement proposals and held a pre-mediation telephone conference with Mr. Geronemus, during which the parties exchanged additional information that helped ensure mediation would be productive. The mediation was successful, resulting in the parties reaching agreement on the principal terms of the settlement, memorialized in a fully-executed term sheet, which was finalized during the evening of June 22.  (*See Id*., ¶ 21.)  During the months that followed, the parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, which are provided to the Court with this Motion.

D.    <u>**The Settlement Agreement.**</u>

1.    <u>**Benefits to Class Members.**</u>

The Settlement provides for a monetary payment of $1,850,000 as compensation to the Settlement Class. (*See* Ex. A, Settlement Agreement § 2.21.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; any Plaintiffs'

---

[4] Mr. Geronemus has been a full-time neutral/mediator with JAMS since 1994. He is a former law clerk to Supreme Court Justice Potter Stewart and has taught negotiation and alternative dispute resolution courses at Yale and Columbia Law Schools.  *See* Mr. Geronemus biography  available at: https://www.jamsadr.com/geronemus/#biography, last visited Oct. 7, 2021.

Compensation approved by the Court; and any Class Counsel fees and costs approved by the Court. (*Id*. § 2.21.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.* §§ 6.1-6.12.)

For those Settlement Class Members with an active account in one or more of the Plans as of August 31, 2021, and who are not Zero Account Balance Current Participants at the time settlement payments are made, automatic settlement payments will be made directly to their Plan accounts (*id.* § 6.4.) For those Settlement Class Members who are a Zero Account Balance Current Participants, their settlement payments will be made via check to the address of such participants (*id.* §6.4, 6.5). Settlement Class Members who do not have an active account in any of the Plans as of August 31, 2021, will submit—either electronically or by mail—a simple claim form to become eligible to receive a cash payment via check. (*See id.* § 6.6; *see also id.* Ex. 1 to Settlement Agreement (Former Participant Claim Form).)

Under the terms of the Settlement Agreement, $100,000 of the Settlement Amount will be issued for deposit into the Escrow Account within thirty-five (35) calendar days after the later of the date (a) the Preliminary Approval Order is entered by the Court, or (b) the Escrow Account is established and the account name and IRS W-9 Form are provided to the University. (*Id.* § 5.4.) The remaining $1,750,000 will be issued for deposit in the Escrow Account within fourteen (14) business days of the Settlement Effective Date. (*Id.* §§ 2.39, 5.5). The Settlement Fund will be administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 2.34.) The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). (*Id.* § 6.) No payment less than $10 shall be distributed to any Settlement Class Member who is a Former Participant of the Plans. (*Id.* § 6.3.3.) Any Net Settlement Amount remaining after the settlement

distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plans to defray administrative fees and expenses of the Plans; there will be no *cy pres* payment or reversion to Miami. (*See id.* § 6.11-6.12.)

In addition, the University has agreed to certain non-monetary terms that will further benefit Settlement Class Members and the Plans more generally. Specifically, within three years of the Settlement Effective Date, the Plans' fiduciaries will initiate a request for proposals ("RFP") for recordkeeping and administrative services for the Plans. Additionally, the University and the Plans' fiduciaries have agreed that they will not agree to any increase in the current contractual fees paid by the Plans to Fidelity and TIAA for recordkeeping services those entities provide to the Plans during the three years following the Settlement Effective Date. (*Id.* §§ 10.1-10.3.)

### 2. Retention of an Independent Fiduciary.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement Agreement provides that the Parties will select an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plans. (*Id.* § 3.1.) The Independent Fiduciary must provide a report memorializing its determination at least 30 days prior to the final approval hearing set by this Court. (*Id.* § 3.1.) Accordingly, in addition to this Court's review and approval, the Settlement will be evaluated by an experienced independent fiduciary whose sole loyalty is to the Plans, and that fiduciary will evaluate the Settlement as to whether it is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

3.      **Attorneys' Fees, Costs and Service Award for Plaintiffs.**

Any Class Counsel Fees and Costs and/or Plaintiffs' Compensation the Court may award

will be paid from the Gross Settlement Fund. (*See generally id.* § 7.) Class Counsel will petition

the Court for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement

Amount, plus reasonable expenses. (*Id.* §§ 7.1-7.3.)  Class Counsel also will petition the Court for

Plaintiffs' Compensation, not to exceed $7,000 for each of the four named Plaintiffs in recognition

of their service on behalf of the proposed Settlement Class. (*Id.* § 7.2.)[5]  The Settlement is not

contingent on any such fees, costs, or compensation being awarded.  Thus, if the Court denies the

petition for Class Counsel Fees and Costs or Plaintiffs' Compensation, in whole or part, such denial

will have <u>no impact</u> on the validity or enforceability of the Settlement.  (*Id.* §§ 7.1, 7.2, 11.3.)

4.      **Release of Claims.**

Under the terms of the Settlement Agreement, Plaintiffs and the Settlement Class

Members, on their own behalf and on behalf of their current and former beneficiaries, their

representatives, and their successors-in-interest, and the Plans absolutely and unconditionally

---

[5] Plaintiffs are mindful of the Eleventh Circuit's recent holding in *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).  In that case, the court held that service awards for class representatives are impermissible. *Id*. at 1257-60. Importantly, however, no mandate in *Johnson* has been issued and a ruling for rehearing *en banc* is pending.  Until the mandate issues, Plaintiffs respectfully submit that this Court may still approve the Settlement and all of its terms, including the service awards sought, as *Johnson* may still be reversed.  Other district courts have addressed similar requests. *See Metzler v. Med. Mgmt. Int'l, Inc*., No. 8:19-CV-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed); *Fruitstone v. Spartan Race, Inc*., No. 20-CV-20836, 2021 WL 2012362, at *13 (S.D. Fla. May 20, 2021) ("The Court agrees with Class Counsel and does not approve the service award, but will reserve jurisdiction to allow Class Counsel to renew the request for a service award should Johnson be reversed.")

release and forever discharge Miami and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id.* §§ 2.31, 2.32, 8.)

5.      **Notice and Objections.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1).

The proposed Settlement Notice is attached to the Settlement Agreement as Exhibit 3. The Settlement Notice will fully apprise Settlement Class Members of the existence of the lawsuit, the Settlement, and information they need to make informed decisions about their rights, including (1) the terms of the Settlement; (2) the nature and extent of the Released Claims and Released Parties; (3) the maximum attorneys' fees and expenses and Plaintiffs' Compensation that Class Counsel will seek; (4) the procedure and timing for objecting to the Settlement; (5) the date and place of the final fairness hearing; and (6) the website that will contain the settlement documents and other information about the Settlement and the litigation.

The notice plan consists of the following steps:  First, the Settlement Notice will be sent by electronic means, or by first-class mail, to all Settlement Class Members identified by the Settlement Administrator, using the last email or mailing address known to the Plans' recordkeepers. Second, the Settlement Administrator will provide a dynamic website that will provide the Settlement Class Members answers to frequently asked questions, court documents, and the ability to email the Settlement Administrator with questions. Third, the Settlement Administrator will provide an IVR call center, which Settlement Class members will be able to call toll-free 24 hours a day, 7 days a week. Fourth, the Settlement Administrator must take

additional action to reach those Settlement Class Members whose notice letters are returned as undeliverable.

Accordingly, both the form of notice and proposed procedures for notice satisfy the requirements of due process, and the Court should approve the notice plan as adequate.

## II.    <u>ARGUMENT</u>.

### A.    <u>The Settlement Class Meets All Requirements of 23(a) and (b)(1)</u>.

As part of the Settlement, Plaintiffs propose, and the University does not object to, for settlement purposes only, certification of the Settlement Class defined as follows:

> All persons who participated in the University of Miami Retirement Savings Plan, the Defined Contribution Retirement Plan for Faculty of the University of Miami, the University of Miami Retirement Savings Plan II, the UHealth Retirement Savings Plan III, and/or the University of Miami Supplemental Retirement Annuity Program at any time from May 1, 2014 through August 31, 2021 (the "Settlement Class Period"), including any Beneficiary of a deceased person who participated in any of the Plans at any time during the Settlement Class Period, and any Alternate Payee of a person subject to a Qualified Domestic Relations Order who participated in any of the Plans at any time during the Settlement Class Period.

> Excluded from this Settlement Class are any individuals who were members of the Plans' fiduciary committees during the Settlement Class Period.

Before assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must conduct an independent class certification analysis. The Settlement Class meets the requirements for certification under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(1).

A class may be certified under Rule 23(a) when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. "These prerequisites are commonly referred to as the requirements of numerosity, commonality, typicality,

and adequacy of representation." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 683–84 (S.D. Fla. 2014).  Plaintiffs satisfy each of these four requirements, as discussed below.

**B.**   <u>**Rule 23(a)**</u>.

**1.**   <u>**Numerosity**</u>.

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are more than 20,000 Settlement Class Members. *See* Plan Form 5500 Annual Return/Report of Employee Benefit   Plan,   2012-2020,   Part   II,   Paragraph   5,   available   at https://www.efast.dol.gov/portal/app/disseminate?execution=e1s2,   last   visited   Oct.,   7,   2021. Numerosity is satisfied. *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

**2.**   <u>**Commonality**</u>.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).  "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011).

The commonality requirement is easily satisfied here.  The legal and factual questions linking Settlement Class Members are related to the resolution of the litigation of every Settlement Class Member's claims.  Not only that, common questions of law and fact are presented about whether   Miami   breached   its   fiduciary   duties   concerning   the   Plans'   recordkeeping   and

12

administrative fees.  Indeed, all of the Plans were subject to the same contractual fee arrangement with Fidelity and TIAA that Plaintiffs claim resulted in both of those entities receiving excessive compensation for the recordkeeping services they provided. This claim and others asserted in the litigation are subject to common proof, including:

    a.    Whether the University is a fiduciary of the Plans under ERISA;

    b.    How the University selected, retained and monitored the Plans' recordkeepers, both with respect to their services and fees;

    c.    Whether the University, in arranging for, selecting, and retaining the Plans' service providers discharged its alleged fiduciary duties with respect to the Plans in a prudent manner ; and

    d.    Whether the University's actions proximately caused losses to the Plans and, if so, the appropriate relief to which the Plans are entitled.

These are the core issues in this case and the alleged bases for the harms that unify all Settlement Class Members. The evidence necessary to resolve these issues is the same. Classes consisting of ERISA plan participants are routinely certified in this and other courts. e.g., *In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *6 (N.D. Ga. Aug. 17, 2016) (finding breach of fiduciary duty satisfied the commonality requirement); *Pantoja v. Edward Zengel & Son Exp., Inc.,* No. 10-20663-CIV, 2011 WL 7657382 (S.D. Fla. Aug. 5, 2011).  Thus, the commonality requirement is satisfied.

    **3.**    **Typicality.**

Rule 23(a)(3) requires plaintiffs to show that their claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). But a plaintiff's claims . . . need not be identical to the proposed class, and minor variations will not render the plaintiff's claims atypical." *Id*. Instead, a plaintiff satisfies the typicality requirement by

showing that the claims "arise from the same event or pattern or practice and are based on the same legal theory." *Id*. "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011).

In this context, the typicality requirement is satisfied if the class representative is "invested in the same funds as the class members," were participants in the same plans, and/or were subject to the same challenged investment or administrative fees. *Id*. Such is the case here. For the same reasons that Plaintiffs' claims are common to all Settlement Class Members, they are also typical. Plaintiffs, like other Settlement Class Members, (1) seek relief for the same losses arising from allegedly excessive administrative fees or imprudent investments, (2) caused by the same alleged breaches of fiduciary duties, (3) affecting the same Plans and funds. *Cf. Spano*, 633 F.3d at 586-87, 589-90. "Nothing more is required to satisfy Rule 23."  *Kraft*, 270 F.R.D. at 367; *see also Gamache v. Hogue,* 338 F.R.D. 275, 288 (M.D. Ga. 2021) ("Plaintiffs have met their burden as to typicality. The members' claims are based on the same events and legal theories: breach of fiduciary duties and monitoring the [plan].")

### 4.  <u>Adequacy.</u>

The final requirement of Rule 23(a) is that Plaintiffs will fairly and adequately protect the interests of the Settlement Class. Fed. R. Civ. P. 23(a)(4). This requirement encompasses two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003). The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Here, the four named Plaintiffs who are the proposed Class Representatives are participants in one or more of the Plans and allegedly suffered a pro rata loss as a result of the University's alleged fiduciary breaches with regard to excessive administrative and recordkeeping fees, among other alleged problems. Like other Settlement Class Members, the proposed class representatives seek to maximize the recovery to the Settlement Class through this litigation. None of the Plaintiffs has any interest that is antagonistic to the claims of any Settlement Class Member. *George v. Kraft Foods Global, Inc*., 251 F.R.D. 338, 348 (N.D. Ill. 2008). The Plaintiffs' interests are, thus, fully aligned with the interests of Settlement Class Members. Furthermore, the Plaintiffs have been and remain willing and able to take the required role in the litigation to protect the interests of those they seek to represent. As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and, further, that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004). All four Plaintiffs have that required understanding and have demonstrated their commitment to this case by providing materials in discovery, submitting themselves to extensive questioning in depositions conducted during discovery, and they were consulted about key terms of the Settlement in the months since.

Finally, as discussed further below, Plaintiffs have retained counsel with significant experience in ERISA class actions. In sum, the named Plaintiffs are adequate representatives of the proposed Settlement Class.

**C.**      **The Settlement Satisfies Rule 23(b)(1).**

Fed. R. Civ. P. 23(b)(1)(B) provides that a class may be certified where "prosecuting separate actions by . . . individual class members would create a risk of . . . adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Courts in this Circuit and elsewhere have certified classes in ERISA breach of fiduciary duty actions, like this case, under Rule 23(b)(1). *See, e.g., Agnone v. Camden Cnty., Ga.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at \*7–8 (S.D. Ga. Mar. 26, 2019); *see also Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946, at \*9–10 (M.D.N.C. Apr. 13, 2018). Consistent with those decisions, the proposed Settlement Class satisfies Rule 23(b)(1).

Rule 23(b)(1)(B) applies where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). "Classic examples" of suits appropriate for class resolution under Rule 23(b)(1)(B) classes include "actions charging a breach of trust by a . . . fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.* This is the type of case that Rule 23(b)(1) envisioned. Plaintiffs allege that the University breached its fiduciary duties to the Plans and that the breach similarly affected all participants and beneficiaries of the Plans. Therefore, the proposed class therefore satisfies Rule 23(b)(1)(A).

D.      **The Settlement Also Meets the Requirements of Rule 23(e) for Approval.**

After preliminarily certifying this case as a class action for settlement purposes pursuant to Rule 23(a) and Rule 23(b)(1)(A), the Court should next look to Rule 23(e) to determine whether the settlement is fair, reasonable, and adequate.

Rule 23(e) requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist.

16

LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*.  The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Under the first step of Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here, and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

1.    **The Class Representatives and Class Counsel Have Adequately Represented the Class**.

The four Plaintiffs, Augustina Santiago, Lilly Leyva, Guillermo Creamer, and Maria Aceituno, along with their counsel, adequately represented the class. This first Rule 23(e)(2)

requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The four Plaintiffs are adequate given that their interests align fully with those of the Settlement Class. Each Plaintiff has been actively involved in this case. Each provided input critical to the drafting of the Complaint and First Amended Complaint, and each participated in discovery, including being deposed by Defense Counsel. Each of the four Plaintiffs also participated in the mediation process. There are no obvious conflicts of interest between the Plaintiffs and the Settlement Class. They, along with Class Counsel, secured a $1,850,000 settlement from a sophisticated and well-represented defendant for the Settlement Class Members they seek to represent. The Named Plaintiffs are adequate representatives of the Settlement Class.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously-filed declarations of Michael McKay from McKay Law, LLC, along with Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A., and Chad Justice from Justice For Justice, LLC. (*See* ECF Nos. 47-1, 47-2, 47-3, and 47-4.) When, as here, the Plaintiffs are represented by counsel who have significant experience in class-action litigation and a documented history of court-approved class action settlements in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake*

*Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). In evaluating class action settlements, the "Court is entitled to rely upon the judgment of experienced counsel for the parties . . . [and] should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (same).

For these reasons, both the Plaintiffs and Class Counsel satisfy Rule 23(e)(2)'s adequacy requirement.

2. <u>**The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**</u>

The proposed Settlement is the product of arm's length negotiations and mediation between the Parties and their counsel. Thus, the next Rule 23(e)(2) factor is also satisfied.

The Settlement was achieved only after arm's-length negotiations between well-informed and experienced counsel after hard-fought motion practice and a substantial exchange of discovery. To be sure, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005). Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. It is recognized that the opinion of experienced and informed counsel

supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co*., 706 F.2d 1144, 1149 (11th Cir. 1983).

Besides being highly experienced, the Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation. *Carpenters Health & Welfare Fund v. Coca-Cola Co*., No. 00-2838, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008).

Additionally, the settlement was ultimately the result of a successful mediation before a class-action mediator, and several months of further negotiations thereafter. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In sum, the attorneys who conducted the negotiations for the Settlement Class have years of experience in conducting complex class action litigation and were thoroughly conversant with the strengths and weaknesses of the case. Class Counsel's decision on settlement should be given great deference.  This also weighs in favor of approval.  *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.").

### 3.      <u>The Settlement Provides Significant Relief to Class Members</u>.

The Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. In fact, the Settlement requires the University to pay $1.85 million for the benefit of the proposed Settlement Class. It also requires the University to take steps following the Settlement Effective Date to help ensure that the Plans' fees and service providers are prudently

managed for years into the future, and insures Plans will not see their contractual recordkeeping fees increase during at least a three year period after the Settlement Effective Date. Moreover, the $1.85 million recovery falls well within the range of reasonableness in this case, as it is a substantial percentage of the estimated recovery Plaintiffs' counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). (*See* Decl. of Brandon J. Hill, ¶ 26.) *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Absent this Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is heavily contested, and both sides would face considerable risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Settlement Class Members.

The $1.85 million cash payment represents a substantial recovery, and the result here is enhanced by further non-monetary benefits summarized above. These results are particularly beneficial to the Settlement Class in light of the risks posed by continued litigation, including the possibility of the Court ultimately finding no liability or the inability to prove damages. While Plaintiffs believe that the claims asserted against the University are meritorious, they recognize that the University strongly disagrees and that Plaintiffs' claims present a number of substantial risks to establishing both liability and damages. There is no certainty that Plaintiffs would have avoided summary judgment, and even if they had, there is no certainty that they would have prevailed at trial. The University mounted a vigorous defense to Plaintiffs' claims and have set forth multiple defenses—affirmative and otherwise—in their pleadings.

Additionally, with respect to the primary question of liability, the University claims that it properly managed its retirement Plans and had prudent processes in place to evaluate the Plans' investments and their recordkeeping and administrative fees. The University claims that its choices were within the range of choices made by other similarly-situated plan fiduciaries at the time they were made. The University also contends that Plaintiffs overstated the potential damages they could recover at trial, even assuming Plaintiffs could establish liability.

Notably, the only similar University case to be tried resulted in a verdict for defendants on all claims. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018). Following appeal, the Second Circuit affirmed the trial judgment in its entirety. *Sacerdote v. New York University,* Case No. 18-2707-cv (2nd. Cir. August 16, 2021.) As the case against NYU clearly illustrates, Plaintiffs faced a substantial risk that they could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the class.

In sum, under the Settlement, the Settlement Class Members can quickly realize a portion of their alleged damages from the Settlement Fund, and will also benefit from the University commitment to engage in an RFP for recordkeeping services to the Plans during the three years following the Settlement Effective Date, with a commitment not to agree to any increase in the contractual fees paid to the Plans' recordkeepers (Fidelity and TIAA) during that time. Even if the amount is less than the minimum that could have been recovered through successful litigation, the settlement is fair, reasonable, and adequate.

### 4.      **The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the Settlement treats class members equitably. As discussed, the Settlement Class Members who with an active account in one or more Plans as of August 31, 2021, will receive automatic settlement payments made directly to their

Plan account(s). And if any of these Settlement Class Members no longer have an active account at the time of payment, then they will receive their settlement payment by check. Meanwhile, Settlement Class Members who do not have an active account in the Plans as of August 31, 2021, will simply submit a claim form, which will entitle them to receive a settlement payment by check provided their payment exceeds a minimum of $10. A detailed "Plan of Allocation" summarized above is set forth in Section 6 of the Settlement Agreement.

     **5.**     **The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members, and might have resulted in no relief at all. Moreover, Miami likely would have appealed any judgment entered against it, resulting in further expense and delay. Complex litigation like this "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wald v. Wolfson* (*In re U.S. Oil and Gas*), 967 F.2d 489, 493 (11th Cir. 1992). By entering into the Settlement now, Plaintiffs saved precious time and money, and avoided the risks associated with further litigation, trial, and appeals.

     **E.**     **The Proposed Notices are Adequate, Appropriate, and Warranted.**

Finally, due process and Federal Rule of Civil Procedure 23(e) do not require that each Settlement Class Member receive settlement notice, but they do require that settlement notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S.

156, 175 (1974). As discussed in section I(D)(5), the proposed form and method of Settlement

Notice here satisfy all due process considerations and the requirements under Rule 23(e)(1).

## III.     CONCLUSION

The Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval of the

Parties' Class Action Settlement.  A Proposed Order is attached as Exhibit 2 to the Settlement

Agreement.

### Certificate of Compliance with Local Rule 7.1

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel

for Plaintiffs certified that Miami does not oppose this Motion.

Dated this 23rd day of November, 2021.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Ave., Suite 300
Tampa, Florida 33602
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com

**MICHAEL C. MCKAY**
*Pro Hac Vice*
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mckay@mckay.law

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N. Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 23, 2021, I electronically filed the foregoing with the

Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to

counsel for all parties of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**