**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:20-cv-21784-DPG**

AUGUSTINO SANTIAGO, LILLY LEYVA,
GUILLERMO CREAMER, and MARIA
ACEITUNO, individually and as representative
of a class of participants and beneficiaries of
behalf of the University of Miami Retirement
Savings Plan,

Plaintiffs,

v.

UNIVERSITY OF MIAMI,

Defendant.

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs Augustina Santiago, Lilly Leyva, Guillermo Creamer, and Maria Aceituno ("Plaintiffs"), individually and on behalf of all others similarly situated, file this Unopposed Motion, and incorporated Memorandum of Law, seeking approval of attorneys' fees and costs in accordance with the Parties' class action settlement.[1]   A proposed Order is attached as Exhibit A. In further support thereof, Plaintiffs respectfully submit the following:

### *Brief Summary*

On December 9, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiffs, on behalf of the Settlement Class, and Defendant. (Doc. 60).  Following entry of that Order, the Settlement Class Administrator sent the Court-approved Notice of Settlement to all Settlement Class Members.  The class members' reactions are overwhelmingly positive.  Thus far, there are zero objections and zero requests for exclusion.  The Court-approved settlement notice reached an estimated 94.08% of the 37,000+ class members.  *See* Exhibit B, February 13, 2022, Noticing Report from Settlement Administrator, American Legal Claims.  The deadline to ask to be excluded is March 6, 2022, and the claims deadline is March 26, 2022.[2]

As explained below, Class Counsel undertook this class action without guarantee of payment and, despite significant hurdles, achieved an excellent result on behalf of Plaintiff and the Class by securing a gross common fund totaling $1,850,000.00.  The Settlement also provides structural safeguards that will help to protect Settlement Class Members' retirement savings for

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on November 23, 2021.  (*See* Doc. 58-1).

[2] Plaintiffs' counsel miscalculated the deadline to file this Motion (under the agreement it should have been filed 60 days prior to the final hearing, or by February 4), a mistake for which the undersigned assumes full responsibility.  However, because the objection deadline does not expire for almost three more weeks, specifically on March 6, 2022, Plaintiffs submit class members are still receiving the required pre-objection notice contemplated by the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*, 975 F. 3d 1244 (11th Cir. 2020).  They still have nearly three weeks to object.

years to come.  Importantly, this request comports with the Eleventh Circuit's decision in *Camden*,

holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be

based upon a reasonable percentage of the fund established for the benefit of the class"). *Camden*

*I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  In light of the result achieved,

including a common fund totaling $1,850,000.00, coupled with the risks undertaken by Class

Counsel, lack of any objections whatsoever thus far, and the public policy need to provide adequate

incentive for attorneys to enforce the critical protection ERISA offers retirement plan participants

(like Plaintiffs and the class members here), Class Counsel's request for attorneys' fees and costs

in the amount of one-third of the Settlement Fund, plus litigation costs, is reasonable and should

be awarded.  In further support of this Motion, Plaintiffs state the following:

## I.      BACKGROUND.

### A.      The Complaint and Motion Practice.

On April 29, 2020, Plaintiffs filed a Complaint in this Court, Case No. 1:20-cv-21784-

DPG. (ECF No. 1.)  Plaintiffs brought this action under the Employee Retirement Income Security

Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging that Miami breached its fiduciary duties

relating to the management, operation, and administration of the Plans, and seeking to recover all

alleged losses resulting from each breach of duty under 29 U.S.C. § 1109(a), and other equitable

relief.  (*See* ECF No. 1.)

More specifically, Plaintiffs filed a three-count Complaint alleging that Miami breached

its fiduciary duties of loyalty and prudence to the Plans and their participants.[3]  (ECF No. 1.)  In

---

[3] The original complaint focused its allegations on the University's Retirement Savings Plan.  However, as a result of further investigation and the settlement reached during the parties' June 22, 2021 mediation, Plaintiffs have filed contemporaneously with this motion an Amended Complaint which expands the asserted claims to include all University retirement plans who received recordkeeping services pursuant to the same contracts with Fidelity and TIAA-CREF as the Retirement Savings Plan.  For simplicity, we refer to those plans collectively herein as the "Plans."  *See also infra* n.2.

Count I, Plaintiffs claimed that Miami permitted the Plans to incur unreasonable and excessive administrative fees by allegedly failing to engage in a prudent process to evaluate and monitor administrative expenses, including fees paid to Fidelity and TIAA-CREF for recordkeeping services those entities provided to the Plans. (*Id*. at ¶¶ 34-37, 39, 40, 102, 104.) Plaintiffs alleged in Count II that Miami failed to prudently select and monitor investment options, including the CREF Stock Account and TIAA Real Estate Account, resulting in losses to Plan participants caused by allegedly expensive and underperforming investment vehicles. (*Id*. at ¶¶ 55, 56, 62, 76-78, 112.) Finally, in Count III, Plaintiffs alleged that Miami breached its duty to monitor appointed fiduciaries. (*Id*. at ¶¶ 41, 57, 118-19.)

On July 8, 2020, Miami moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant Rule 12(b)(1). (ECF No. 16.) The University argued, among other things, that the Complaint failed to allege plausibly that Miami breached its duty of loyalty, that the Plans paid excessive administrative/recordkeeping fees, or that the University's process for evaluating investment options was deficient. (*Id*.) Plaintiffs filed their Opposition on August 7, 2020 (ECF No. 23), along with supporting documentation. The University filed a Reply (ECF No. 32) on September 4, 2020. Both sides also filed Notices of Supplemental Authority (ECF Nos. 37, 38, 42).  On November 17, 2020, Magistrate Judge Lauren Fleischer Louis held a hearing (conducted electronically) on the University's Motion, which lasted approximately 2 hours and 10 minutes.

On March 1, 2021, Magistrate Judge Louis issued a Report and Recommendation ("R&R"), recommending that Miami's motion to dismiss be granted as to Counts II and III of the Complaint and Plaintiffs' "duty of loyalty" claim in Count I, but that the motion be denied with respect to Plaintiffs' "duty of prudence" claim in Count I. (ECF No. 43.) This Court affirmed and

adopted the R&R on March 26, 2021, ordering the case to proceed as to Plaintiffs' duty-of-prudence claim in Count I. (ECF No. 46.)

On April 5, 2021, Plaintiffs filed their Rule 23 Motion for Class Certification. (ECF No. 47.) Soon thereafter, on April 23, 2021, Miami filed its Answer and Defenses. (ECF No. 52.) Miami raised eighteen (18) separate Defenses.

**B.     Discovery.**

Plaintiffs initiated discovery while motion practice was ongoing. They served document requests and interrogatories on the University, along with a Fed. R. Civ. P. 30(b)(6) deposition notice. The University produced many documents central to the processes followed by the Plans' fiduciaries, which Class Counsel and their retained industry experts reviewed. The University also deposed each of the four named Plaintiffs. Plaintiffs also obtained relevant documents from third parties, including the United States Department of Labor concerning the claims and defenses in this matter. In addition, Plaintiffs retained and worked with an expert witness who has substantial experience in similar ERISA class actions to develop damages models and to opine on alleged losses sustained by the named Plaintiffs and Settlement Class Members.

**C.     Settlement Negotiations.**

In May 2021, after the partial denial of Miami's Motion to Dismiss, counsel discussed whether a pre-trial class-wide resolution might be attainable. Ultimately, the parties agreed to participate in a private mediation.

On June 22, 2021, the parties engaged in a full-day mediation with a nationally recognized mediator, David Geronemus, Esq., who has extensive experience handling ERISA fiduciary-breach lawsuits like this one. (*See* Decl. of Brandon J. Hill, ¶ 20.) In advance of the mediation, the parties submitted mediation briefs, including damage analyses and settlement proposals and held a pre-mediation telephone conference with Mr. Geronemus, during which the parties

exchanged additional information that helped ensure mediation would be productive. The mediation was successful, resulting in the parties reaching agreement on the principal terms of the settlement, memorialized in a fully executed term sheet, which was finalized during the evening of June 22. (*See Id*., ¶ 21.) During the months that followed, the parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, which are provided to the Court with this Motion.

       **D.**     **The Settlement Agreement.**

       **1.**     **Benefits to Class Members.**

The Settlement provides for a monetary payment of $1,850,000.00 as compensation to the Settlement Class. (*See* Doc. 58-1, Settlement Agreement § 2.21.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; any Plaintiffs' Compensation approved by the Court; and any Class Counsel fees and costs approved by the Court. (*Id*. § 2.21.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.* §§ 6.1-6.12.)

For those Settlement Class Members with an active account in one or more of the Plans as of August 31, 2021, and who are not Zero Account Balance Current Participants at the time settlement payments are made, automatic settlement payments will be made directly to their Plan accounts (*id.* § 6.4.) For those Settlement Class Members who are a Zero Account Balance Current Participants, their settlement payments will be made via check to the address of such participants (*id.* §6.4, 6.5). Settlement Class Members who do not have an active account in any of the Plans as of August 31, 2021, will submit—either electronically or by mail—a simple claim form to become eligible to receive a cash payment via check. (*See id.* § 6.6; *see also id.* Ex. 1 to Settlement Agreement (Former Participant Claim Form).)

Under the terms of the Settlement Agreement, $100,000 of the Settlement Amount will be issued for deposit into the Escrow Account within thirty-five (35) calendar days after the later of the date (a) the Preliminary Approval Order is entered by the Court, or (b) the Escrow Account is established and the account name and IRS W-9 Form are provided to the University. (*Id.* § 5.4.) The remaining $1,750,000 will be issued for deposit in the Escrow Account within fourteen (14) business days of the Settlement Effective Date. (*Id.* §§ 2.39, 5.5). The Settlement Fund will be administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 2.34.) The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). (*Id.* § 6.) No payment less than $10 shall be distributed to any Settlement Class Member who is a Former Participant of the Plans. (*Id.* § 6.3.3.) Any Net Settlement Amount remaining after the settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plans to defray administrative fees and expenses of the Plans; there will be no *cy pres* payment or reversion to Miami. (*See id*. § 6.11-6.12.)

In addition, the University has agreed to certain non-monetary terms that will further benefit Settlement Class Members and the Plans more generally. Specifically, within three years of the Settlement Effective Date, the Plans' fiduciaries will initiate a request for proposals ("RFP") for recordkeeping and administrative services for the Plans. Additionally, the University and the Plans' fiduciaries have agreed that they will not agree to any increase in the current contractual fees paid by the Plans to Fidelity and TIAA for recordkeeping services those entities provide to the Plans during the three years following the Settlement Effective Date. (*Id*. §§ 10.1-10.3.)

### 2.    Retention of an Independent Fiduciary.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement Agreement provides that the

Parties will select an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plans. (*Id.* § 3.1.) The Independent Fiduciary must provide a report memorializing its determination at least 30 days prior to the final approval hearing set by this Court. (*Id.* § 3.1.)

### 3.   Attorneys' Fees, Costs and Service Award for Plaintiffs.

Any Class Counsel Fees and Costs and/or Plaintiffs' Compensation the Court may award will be paid from the Gross Settlement Fund. (*See generally id.* § 7.) Class Counsel is, by this Motion (and as set out further below), petitioning the Court for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses totaling $18,707.30. (*Id.* §§ 7.1-7.3.)

### 4.   Notice and Objections.

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1).

### 5.   The Class Members' Reactions to the Settlement.

The Settlement Claims Administrator, American Legal Claims, sent the Court-approved Class Notice to the Settlement Class Members beginning January 26 through February 4, 2022.  A total of 37,478 Class Notices were either mailed or emailed to members of the Settlement Class in accordance with the Court's Preliminary Approval Order.  *See* Exhibit B, February 13, 2022, Noticing Report from Settlement Administrator, American Legal Claims.  Thus far reactions from the class are overwhelmingly positive.  In fact, no class members objected and none sought exclusion.  The undersigned also personally spoke with many class members who called with

questions, all of whom were pleased with the settlement.  Given these facts, the Class Members'

reactions are overwhelmingly positive.

II.    **THE COURT SHOULD AWARD THE FEES AND COSTS SOUGHT.**

   A.    **The Requested Attorneys' Fees and Costs Are Reasonable And Should Be Awarded.**

In accordance with binding precedent from *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946

F.2d 768, 770 (11th Cir. 1991), in the Eleventh Circuit "attorneys' fees awarded from a common

fund shall be based upon a reasonable percentage of the fund established for the benefit of the

class". *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

Both the Eleventh Circuit and recent courts in this District have ruled that the common

fund should be valued at the amount available, not the amount claimed. *See Waters v. Int'l

Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33-1/3%

of total amount made available to class, and determining that attorney's fees may be determined

based on the total benefits available, even where the actual payments to the class following a claims

process are lower); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-CIV,

2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) ("Courts within this Circuit have routinely

awarded attorneys' fees of 33 percent or more of the gross settlement fund."); *Wolff v. Cash 4

Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and

concluding that 33% is consistent with the market rate in class actions); *Hanley v. Tampa Bay

Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, (M.D. Fla. Apr. 23,

2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of

the common settlement fund.").

*Camden I* is the preeminent case and binding case in this Circuit dealing with the issue of

attorneys' fees in common-fund class-action cases like this one. "There is no hard and fast rule

mandating a certain percentage of a common fund which may be awarded as a fee because the

amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 774. As a general proposition, "the majority of common fund fee awards fall between 20% to 30% of the fund," although "an upper limit of 50% of the fund may be stated as a general rule." *Id.* at 774–75.

Although the total value recovered for the Class Members is an excellent result at $1,850,000.00, as discussed in *Hamilton v. SunTrust Mortgage, Inc*., any concerns as to the value of the claims actually paid when considering Class Counsels request for attorney's fees and expenses are "contrary to the law in the Eleventh Circuit…." 2014 WL 5419507, at *7 (S.D. Fla., Oct. 24, 2014).   Rather, attorneys in a class action "are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980); *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1295-96 (11th Cir. 1999)); *David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (treating settlement with ascertainable benefits as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant).

Here, Plaintiffs' counsel seeks fees totaling one-third of the gross common fund, totaling $616,666.67 in attorneys' fees, plus litigation costs.  Such a request is in keeping with the Eleventh Circuit's pronouncements above, as well as the well-recognized precept that percentage-of-the-fund fee awards should be calculated based on the entirety of the fund available for Settlement Class Members. *See Camden*, 946 F.2d at 774; *see also Sawyer v. Intermex Wire Transfer, LLC*, No. 19-cv-22212, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc*., No. 13-CV-21016, [ECF No. 95] (S.D. Fla. June 24, 2015) (awarding one-third plus costs); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-CV-20837, [ECF No. 196] at 6 (S.D. Fla. June 21, 2013)( awarding one-third plus costs

9

and explaining that, "[c]ommon-fund attorney fee awards of one-third are "consistent with the trend in this Circuit.").

      **B.**      <u>Application of the *Johnson* Factors Supports Awarding the Requested Fee</u>.

      Case law has clarified the factors to which a district court is to look in determining a reasonable percentage to award class-action counsel. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden*, 946 F.2d at 772, n.3 (citing factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden*, 946 F.2d at 775.   As set forth below, application of the *Johnson* factors used by courts in the Eleventh Circuit when awarding fees from a common fund to the Settlement achieved in this case by Class Counsel, as well as those factors unique to this case, demonstrate that an award of fees totaling one-third of Settlement Fund is appropriate.

      **1.**      <u>Time and labor required</u>.

      As to the first *Johnson* factor, and as detailed in the attached declaration (*see* Hill Decl., ¶¶13-21, 28-32), Class Counsel expended time conducting class action-research; drafting and filing the complaint; conducting extensive research and briefing related to Defendant's Motion to

Dismiss and as to Defendant's Objection to the Magistrate Judge's Report and Recommendation; drafting and serving extensive class-wide discovery on Defendant; preparing for and defending the depositions of each of the Named Plaintiffs; drafting and filing the Plaintiffs' Motion for Class Certification; reviewing the extensive discovery produced by Defendant; preparing for and attending mediation; drafting, editing, and finalizing the motion seeking preliminary approval of the class settlement; reviewing and analyzing the proposed Settlement Agreement and supporting attachments, including the proposed class notification documents; responding to inquiries from the class members after Class Notice was sent out; handling questions from the Settlement Administrator; and, of course, drafting this Motion.   Additionally, the motion for final approval still must be drafted and heard, requiring significant preparation time.

If the Court grants final approval of the Settlement, Class Counsel will continue to represent the Class and monitor the completion of the Settlement. Class Counsel will also defend the Settlement against appeals by objectors, if any, will oversee the Settlement to ensure that Class Members receive their Settlement benefits, and will continue to respond to inquiries from Class Members. Therefore, Class Counsel will have significantly more time in this matter to bring it to full and final resolution once the case is complete.

For these reasons, and based upon the facts and authority cited herein, Class Counsel respectfully submits that this Court should find that the fees sought by Class Counsel in this action are reasonable and warranted.

### 2 / 3.   This case presented novel and difficult questions requiring a high level of skill to perform the legal services properly.

The second *Johnson* factor recognizes that attorneys should be appropriately compensated for accepting novel and difficult cases. *Johnson*, 488 F.2d at 718. The third *Johnson* factor is the "[t]he skill requisite to perform the legal service properly." *Johnson*, 488 F.2d 718. This third factor ties directly to the second *Johnson* factor and requires the Court to "closely observe the

attorney's work product, his preparation, and general ability before the court." *Id*.  Because the second and third *Johnson* factors are tied together, Plaintiff analyzes them together.

Courts in this Circuit recognize that class actions involving various legal theories are, by their nature, very difficult. *See Yates v. Mobile Cty. Personnel Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) (noting that extremely complicated litigation requires thorough and detailed research of almost every question involved); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 547 (S.D. Fla. 1988).  One Court in this Circuit referred to ERISA 403(b) claims as "complex." *Henderson v. Emory Univ.*, No. 16-2920-CAP, 2018 WL 6332343, at \*7 (N.D. Ga. Sept. 13, 2018).   To be sure, unlike other common employment law-related claims, such as suits brought under the Fair Labor Standards Act, there are relatively few ERISA 403(b) class action cases in this Circuit (the undersigned is aware of only one—specifically the *Emory* settlement).  In fact, this is the first University 403(b) class action settlement that has ever occurred in the State of Florida (at least of which the undersigned is aware).  While such settlements have certainly occurred in other states, there are no prior Florida-based University 403(b) class action settlements.

Not only that, but similar cases against universities have also been dismissed and upheld on appeal, another university obtained summary judgment on most claims, and the only trial in an excessive fee case involving a university's retirement plan resulted in a judgment for the defendant, New York University. *See Sacerdote v. New York Univ*., 328 F.Supp.3d 273 (S.D.N.Y. 2018). As such, not only did this lawsuit present novel and complex issues of law, Plaintiffs also faced recent adverse precedent. *See, e.g., Cunningham v. Cornell Univ*., No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019) (granting summary judgment); *Divane v. Northwestern Univ*., No. 16-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) (granting motion to dismiss) (affirmed, 953 F.3d 980 (7th Cir. Mar. 25) (vacated and remanded by *Hughes v. Nw. Univ*., 142 S. Ct. 737, 739 (2022)); *Wilcox v. Georgetown Univ*., No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019) (same);

*Davis v. Wash. Univ. in St. Louis*, No. 17-1641, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018) (same).

Therefore, this case is extremely novel and presented difficult questions of both fact and law. Accordingly, a small subset of the Bar is presently seasoned to handle this type of case, evidenced by the relatively few number of ERISA class action cases filed (or pending) in this Circuit involving University 403(b) claims. Class Counsel had the expertise to bring this case and the expertise to marshal it to a favorable outcome. Few lawyers have the skill and wherewithal to see this case through, against a sophisticated and well-funded Defendant and top-notch Defense Counsel, to the conclusion the Parties present for Final Approval. This factor also weighs heavily in favor of the reasonableness of the requested fee.

The Eleventh Circuit recognizes skill as the "ultimate determinate of compensation level," as "reputation and experience are usually only proxies for skill." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1990). Applying these factors, Class Counsel have shown themselves to be highly skilled. The complexity of this innovative area of class action litigation, the genuine possibility of Defendant's success in having the case dismissed on standing or other grounds, the dearth of case law on 403(b) class actions (at least in this Circuit), the ability to achieve a favorable outcome despite highly skilled Defense counsel, and the complexity inherent with any class action, all demonstrate that Class Counsel are highly skilled practitioners. This weighs in favor of finding the fee sought of one-third of the common fund to be reasonable.

### 4.   Preclusion of other employment.

The fourth *Johnson* factor is "[t]he preclusion of other employment by the attorney due to acceptance of the case." *Johnson*, 488 F.2d at 718. This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the

representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes.

Here the hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation. A significant amount of Counsel's time was devoted to this case during the time leading up to class certification and mediation. Additional work performed is outlined in the attached declaration of the undersigned. Additionally, this case involved three separate law firms on Plaintiffs' side, and a total of four different attorneys from the three firms. While the undersigned did much of the day-to-day work, Mr. Cabassa from Wenzel Fenton Cabassa, P.A., also performed work in this case. (*See* Hill Decl., ¶¶ -16). Additionally, Plaintiffs' lead counsel, Mike McKay, from McKay Law, LLC, spent an equal amount of time (if not more) litigating this case. Mr. Justice from the Justice for Justice law firm also contributed both his time and money securing this settlement. Thus, this factor also militates in favor of finding the Requested Fee reasonable.

### 5. __Customary fee__.

The customary fee for counsel representing a plaintiff in an employment matter such as this depends on the experience and skill level of the involved attorneys. The fee sought by Plaintiffs' Counsel is reasonable and customary in class actions in this Circuit. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorney's fees may be determined based on the total benefits available, even where the actual payments to the class following a claims process are lower); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-CIV, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) ("Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and

concluding that 33% is consistent with the market rate in class actions); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund.").  This factor also supports granting the requested fee.

### 6.   <u>The case was taken on contingency.</u>

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered by the attorney. *Johnson*, 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988); *see also Hall v. Board of School Comm'rs*, 707 F.2d 464, 465 (11th Cir. 1983) (concluding that district court abused its discretion where it failed to award an enhancement of the amount of attorneys' fees where plaintiff's counsel was retained under a contingency fee agreement).

Class Counsel undertook significant financial risk in prosecuting this case because it was taken on a contingency basis with no guarantee of recovery. Plaintiffs pursued difficult claims, against a well-funded Defendant. There were no assurances that Plaintiffs would survive early motion practice, summary judgment, or trial, much less achieve a $1.85 million recovery for the class.

To obtain this result, Plaintiffs' Counsel incurred significant fees in prosecuting this action and has received no compensation thus far. Moreover, there was a very real possibility that Plaintiffs' Counsel would not recover anything for their work, should Defendant succeed at the pleading stages of litigation with a motion to dismiss, or later at summary judgment, trial or, later still, on appeal. For these reasons, this factor supports the approval of the requested amount of attorneys' fees. *Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012).

7. **Time Limitations**.

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. This case involved significant hours of work and demanded much of Plaintiffs' Counsel's time. Thus, this factor also cuts in favor of finding the fee sought reasonable.

8. **Amount involved and the results obtained**.

Class Counsel secured from Defendant a gross common fund totaling $1,850,000.00 on behalf of the Settlement Class.  In doing so, Class Counsel effectively and quickly achieved a high-dollar Settlement that provides meaningful monetary relief for all Class Members, despite significant litigation risks which could have resulted in the Class achieving a significantly worse recovery, or even no recovery at all. Accordingly, given the excellent results achieved, this factor weighs heavily in favor of awarding the Requested Fee.

9. **Experience, Reputation, and Ability of the Attorneys**.

This case has, at all stages, been handled on both sides by very experienced lawyers whose reputations for effective handling of complex litigation are known throughout Florida, and even throughout the country.   Plaintiffs' Counsel set forth their qualifications and prior experience in the Declarations they attached to their Motion for Class Certification.  (*See* Docs. 47-1 through 47-4).  Additionally, the undersigned has filed an additional supporting declaration in support of this Motion.  (*See generally* Hill. Decl.).  This factor also weighs in favor of awarding the Requested Fee.

10. **Undesirability of the case**.

In the above sections Plaintiffs highlighted the complexity and skill required to prosecute this action. The expense and time involved in prosecuting such litigation on a contingent basis,

with no guarantee or high likelihood of recovery would make this case highly undesirable for many attorneys.

The requested fee of one-third of the monetary recovery is reasonable and appropriate given the significant risk of nonpayment in these types of cases due to the novel nature of this case and adverse precedents. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066-JEC, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008). For this case, the risk of nonpayment was tremendous, especially since the only ERISA excessive fee case involving a university to go to trial in history resulted in judgment for the Defendants. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018). The risk of nonpayment is further illustrated by dismissals of similar excessive fee allegations involving university retirement plans. *See, e.g., Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019) (granting defendants' summary judgment in significant part). Moreover, even if the class obtains a trial judgment, recovery is far from certain, and years of appeals may follow.

Additionally, the Settlement is even more impressive when considering the substantial risks of non-recovery in this case. ERISA retirement plan class action cases are not "sure things" or "slam dunks." Unlike other employment law statutes, attorneys' fees are discretionary. Therefore, this factor, too, supports the requested amount of attorneys' fees sought in this Motion.

### 11.   Nature and length of the professional relationship with the client.

Plaintiffs' Counsel was not representing a long-term client in this matter. This factor is neutral.

### 12.   Awards in similar cases.

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719.  In similar ERISA

excessive fee cases, district courts have consistently recognized that a one-third fee is the market rate. *See Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019); *Sims v. BB&T Corp.*, No. 15-1705, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019); *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016), *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015), *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014), *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at *3 (C.D. Ill. Oct. 15, 2013), *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 WL 13089487, at *3 (N.D. Ill. June 26, 2012).   In each of those cases, the district courts awarded one-third of the settlement to cover attorney's fees. This great weight of authority more than demonstrates that a one-third fee is justified in this case.

This is a highly complex case with numerous issues that were vigorously contested. *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (noting "ERISA law is highly complex"); *see Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 439 (D. Md. 1998) (finding the case was complex based on a "regulatory climate in flux."). The "rapidly evolving" area of law places demands on counsel and the Court that are "complex and require the devotion of significant resources". *In re Wachovia Corp. ERISA Litig.*, No. 09-262, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011). Excessive fee litigation "entails complicated ERISA claims that are not only dependent on the statute but also on various regulations that implement ERISA."  *Martin v. Caterpillar, Inc.*, No. 07-CV-1009, 2010 WL 3210448, at *2 (C.D. Ill. Aug. 12, 2010).  It also involves "novel questions of law". *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012).  The size and complexity of the issues before the Court, and the novelty of the litigated claims involving a 403(b) plan, support the one-third fee sought.

In sum, the amount of fees and costs sought here total one third of the Settlement common fund. One-third of a common fund is well in line with fees generally awarded in class action cases, and for settlements of this amount and, pursuant to the factors discussed above, should be deemed reasonable.

## III.   THE COSTS SOUGHT SHOULD BE AWARDED.

Pursuant to the Parties' settlement agreement, Plaintiffs are entitled to recover their costs. Class Counsel seek $18,707.30 in reimbursable costs. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund as a matter of course." *Id.* at *6; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.") The requested award of costs and expenses here consists of mediation and case-related travel costs, and the Court finds these expenses to be in line with normal expenditure amounts. Those costs include the following:

- For the Wenzel Firm a total of $8,282.60 is sought in costs, specifically: $400 filing fee; $18.45 in postage; the $66.75 process service fee; $2,914.90 in court reporter fees; and, finally, $4,882.50 for the Jams' mediation invoice);

- For the McKay firm a total of $9,339.70 in costs is sought, specifically: $3,400 in expert costs; $4,882.50 – McKay firm portion of Jams' mediation invoice; $601.20 – American Airlines (anticipated cost for final hearing); $296 – hotel (anticipated cost for final hearing); $80 – meals (anticipated cost for final hearing); $80 – cab/Uber (anticipated cost for final hearing); and, finally,

- For the Justice firm a total of $1,085.00 is sought for the Justice firm portion of the Jams' mediation invoice.

The costs sought herein by Class Counsel are reasonable and should be awarded from the common fund. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL

2472499, at *2 (M.D. Fla. June 5, 2017) (approving recovery of mediation, travel, and other expenses incurred in connection with the matter).

## IV.    **NAMED PLAINTIFFS' COMPENSATION AWARDS.**

Class Counsel is also petitioning the Court for Plaintiffs' Compensation, not to exceed $7,000 for each of the four named Plaintiffs in recognition of their service on behalf of the proposed Settlement Class. (*Id.* § 7.2.)[4]

## V.    **CONCLUSION.**

For the reasons set forth above, the Attorneys' Fees and Costs sought herein are reasonable and should be awarded.  Defendant, and to date no Class Member, has objected to the relief sought in this Motion.  In fact, thus far not a single Class Member has asked to be excluded.

*WHEREFORE*, Plaintiffs respectfully moves this Court to grant this Motion and award them attorneys' fees in the amount of one-third of the total common fund ($616,666.67), plus litigation costs in the amount of $18,707.30, for a total fee and cost award to Plaintiff's counsel consisting of $635,373.91.  Finally, the Court should award $7,000 to the four named Plaintiffs. A proposed Order is attached as Exhibit A.

---

[4] Plaintiffs are mindful of the Eleventh Circuit's recent holding in *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). In that case, the court held that service awards for class representatives are impermissible. *Id*. at 1257-60. Importantly, however, no mandate in *Johnson* has been issued and a ruling for rehearing *en banc* is pending. Until the mandate issues, Plaintiffs respectfully submit that this Court may still approve the Settlement and all its terms, including the service awards sought, as *Johnson* may still be reversed. Other district courts have addressed similar requests. *See Metzler v. Med. Mgmt. Int'l, Inc*., No. 8:19-CV-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020); *Fruitstone v. Spartan Race, Inc*., No. 20-CV-20836, 2021 WL 2012362, at *13 (S.D. Fla. May 20, 2021) ("The Court agrees with Class Counsel and does not approve the service award, but will reserve jurisdiction to allow Class Counsel to renew the request for a service award should Johnson be reversed.")

## Certificate of Compliance with Local Rule 7.1

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel for Plaintiffs certified that Miami does not oppose this Motion.  Specifically, in accordance with the Parties' settlement agreement, "Miami will take no position on Class Counsel's request for Attorneys' Fees and Costs, which shall be recovered from the Gross Settlement Amount." *See* Doc. 58-1, Settlement Agreement § 7.1.

Dated this 14th day of February, 2022.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2022, I caused a true and correct copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which then caused a notice of electronic filing on all Counsel of Record.

/s/ *Brandon J. Hill*
**BRANDO N J. HILL**

21