**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:20-cv-21784-DPG**

AUGUSTINO SANTIAGO, LILLY LEYVA,
GUILLERMO CREAMER, and MARIA
ACEITUNO, individually and as representative
of a class of participants and beneficiaries of
behalf of the University of Miami Retirement
Savings Plan,

        Plaintiffs,

v.

UNIVERSITY OF MIAMI,

        Defendant.

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PARTIES'**
**CLASS ACTION SETTLEMENT**

Plaintiffs Augustina Santiago, Lilly Leyva, Guillermo Creamer, and Maria Aceituno ("Plaintiffs"), individually and on behalf of all others similarly situated, file this Unopposed Motion, and incorporated Memorandum of Law, seeking final approval of the class action settlement between Plaintiffs and the University of Miami ("Defendant" or Miami").[1]  In further support thereof, Plaintiffs respectfully submit the following:

### *Brief Summary*

On December 9, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiffs, on behalf of the Settlement Class, and Defendant. (Doc. 60).  Following entry of that Order, the Settlement Administrator sent the Court-approved Notice of Settlement to all Settlement Class Members.  The Court-approved Settlement Notice reached an estimated 99.63% of the 37,000+ class members. (*See* Exhibit B, Sworn Declaration from Keith Salhab, Director of Operations for Settlement Administrator, American Legal Claim Services, LLC ("Salhab Decl.") ¶¶ 5-8).  Importantly, the Settlement Class Members' reactions to the Settlement were overwhelmingly positive.  Not a single objection was filed prior to the March 6, 2022 deadline.  Nor has there been a late-filed objection.  The undersigned has personally spoken with approximately 50-100 class members, all of whom were supportive of the Settlement.  (*See* Exhibit C, Sworn Declaration from Brandon J. Hill ("Hill Decl."), ¶¶ 27-28).

Additionally, attached as Exhibit D is a report from Gallagher Fiduciary Advisors, LLC ("Gallagher").  Gallagher was appointed to act as an independent fiduciary of the University of Miami Retirement Savings Plan, the Defined Contribution Retirement Plan for Faculty of the University of Miami, the University of Miami Retirement Savings Plan II, the UHealth Retirement

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on November 23, 2021.  (*See* Doc. 58-1).

Savings Plan III, and the University of Miami Supplemental Retirement Annuity Program (collectively, the "Plans") in connection with the proposed settlement. Gallagher's specific responsibilities pursuant to its agreement and the Settlement are to (i) determine whether to approve and authorize the settlement of Released Claims on behalf of the Plans and (ii) determine whether the Settlement satisfies the requirements of the Prohibited Transaction Class Exemption 2003-39 (the "Class Exemption"). Ultimately, Gallagher reached the following conclusion:

> After a thorough review of the pleadings and interviews with the parties' counsel and the mediator, Gallagher has concluded that the Settlement was achieved at arms' length and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone. The fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation.

(Exhibit D, p. 4).

Thus, not only has this Honorable Court preliminarily approved the settlement agreement, so have the Settlement Class Members, and so has the independent fiduciary, Gallagher, charged with ensuring that the Settlement comports with the Class Exemption.

In sum, little has changed since the Court's Order preliminarily approving the Settlement, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiffs request that the Court enter the Final Approval Order attached as Exhibit A, which was previously made part of the Settlement Agreement and filed at Doc. 58-1, Ex. 4.. In further support of this Motion, Plaintiffs state the following:

## I.     BACKGROUND.

### A.     The Complaint and Motion Practice.

On April 29, 2020, Plaintiffs filed a Complaint in this Court, Case No. 1:20-cv-21784-DPG. (ECF No. 1.) Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging that Miami breached its fiduciary duties relating to the management, operation, and administration of the Plans, and seeking to recover all

alleged losses resulting from each breach of duty under 29 U.S.C. § 1109(a), and other equitable relief.  (*See* ECF No. 1.)

More specifically, Plaintiffs filed a three-count Complaint alleging that Miami breached its fiduciary duties of loyalty and prudence to the Plans and their participants.[2]  (ECF No. 1.)  In Count I, Plaintiffs claimed that Miami permitted the Plans to incur unreasonable and excessive administrative fees by allegedly failing to engage in a prudent process to evaluate and monitor administrative expenses, including fees paid to Fidelity and TIAA-CREF for recordkeeping services those entities provided to the Plans. (*Id*. at ¶¶ 34-37, 39, 40, 102, 104.)  Plaintiffs alleged in Count II that Miami failed to prudently select and monitor investment options, including the CREF Stock Account and TIAA Real Estate Account, resulting in losses to the Plans. (*Id*. at ¶¶ 55, 56, 62, 76-78, 112.)  Finally, in Count III, Plaintiffs alleged that Miami breached its duty to monitor appointed fiduciaries. (*Id*. at ¶¶ 41, 57, 118-19.)

On July 8, 2020, Miami moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant Rule 12(b)(1). (ECF No. 16, "Motion to Dismiss") Miami argued, among other things, that the Complaint failed to allege plausibly that Miami breached its duty of loyalty, that the Plans paid excessive administrative/recordkeeping fees, or that Miami's process for evaluating investment options was deficient. (*Id*.)  Plaintiffs filed their Opposition on August 7, 2020 (ECF No. 23), along with supporting documentation.  Miami filed a Reply (ECF No. 32) on September 4, 2020.  Both sides also filed Notices of Supplemental Authority (ECF Nos. 37, 38, 42).  On November 17, 2020, Magistrate Judge Lauren Fleischer

---

[2] The original complaint focused its allegations on the University's Retirement Savings Plan.  However, as a result of further investigation and the settlement reached during the Settling Parties'' June 22, 2021, mediation, Plaintiffs filed an Amended Complaint, expanding the asserted claims to include all of the Plans (as defined in the Settlement Agreement).  .  *See* ECF No. 59.

Louis held a hearing (conducted electronically) on Miami's Motion to Dismiss, which lasted approximately 2 hours and 10 minutes.

On March 1, 2021, Magistrate Judge Louis issued a Report and Recommendation ("R&R"), recommending the Motion to Dismiss be granted as to Counts II and III of the Complaint and Plaintiffs' "duty of loyalty" claim in Count I, but that the Motion to Dismiss be denied with respect to Plaintiffs' "duty of prudence" claim in Count I. (ECF No. 43.)  This Court affirmed and adopted the R&R on March 26, 2021, ordering the case to proceed as to Plaintiffs' duty-of-prudence claim in Count I. (ECF No. 46.)

On April 5, 2021, Plaintiffs filed their Rule 23 Motion for Class Certification. (ECF No. 47.)  Soon thereafter, on April 23, 2021, Miami filed its Answer and Defenses. (ECF No. 52.) Miami raised eighteen (18) separate Defenses.

**B.** **Discovery.**

Plaintiffs initiated discovery while motion practice was ongoing.  They served document requests and interrogatories on Miami, along with a Fed. R. Civ. P. 30(b)(6) deposition notice. Miami produced many documents central to the processes followed by the Plans' fiduciaries, which Class Counsel and their retained industry experts reviewed.  Miami also deposed each of the four named Plaintiffs.  Plaintiffs also obtained relevant documents from third parties, including the United States Department of Labor concerning the claims and defenses in this matter.  In addition, Plaintiffs retained and worked with an expert witness who has substantial experience in similar ERISA class actions to develop damages models and to opine on alleged losses sustained by the named Plaintiffs and Settlement Class Members.

C.      **Settlement Negotiations.**

In May 2021, after the partial denial of Miami's Motion to Dismiss, counsel discussed whether a pre-trial class-wide resolution might be attainable.  Eventually, the parties agreed to participate in a private mediation.

On June 22, 2021, the parties engaged in a full-day mediation with a nationally recognized mediator, David Geronemus, Esq., who has extensive experience handling ERISA fiduciary-breach lawsuits like this one.  In advance of the mediation, the parties submitted mediation briefs, including damage analyses and settlement proposals and held a pre-mediation telephone conference with Mr. Geronemus, during which the parties exchanged additional information that helped ensure mediation would be productive. The mediation was successful, resulting in the parties reaching agreement on the principal terms of the settlement, memorialized in a fully executed term sheet, which was finalized during the evening of June 22.  (*See Id.*, ¶ 21.)  During the months that followed, the parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, which are provided to the Court with this Motion.

D.      **The Settlement Agreement.**

1.      **Benefits to Class Members.**

The Settlement provides for a monetary payment of $1,850,000.00 as compensation to the Settlement Class. (*See* Doc. 58-1, Settlement Agreement § 2.21.)  This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; any Plaintiffs' Compensation approved by the Court; and any Class Counsel fees and costs approved by the Court. (*Id*. § 2.21.)  The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.* §§ 6.1-6.12.)

For those Settlement Class Members with an active account in one or more of the Plans as of August 31, 2021, and who are not Zero Account Balance Current Participants at the time

settlement payments are made, automatic settlement payments will be made directly to one or more of their accounts in the Plans. (*id.* § 6.4.)  For those Settlement Class Members who are a Zero Account Balance Current Participants, their settlement payments will be made via check to the address of such participants (*id.* §6.4, 6.5).  Settlement Class Members who do not have an active account in any of the Plans as of August 31, 2021, will submit—either electronically or by mail— a simple claim form to become eligible to receive a cash payment via check.  (*See id.* § 6.6; *see also id.* Ex. 1 to Settlement Agreement (Former Participant Claim Form).)

In accordance with the Settlement Agreement, $100,000 of the Settlement Amount was deposited into the Escrow Account following the Court's order preliminarily approving the Settlement. (*Id.* § 5.4.)  The remaining $1,750,000 will be issued for deposit in the Escrow Account within fourteen (14) business days of the Settlement Effective Date. (*Id.* §§ 2.39, 5.5).   The Settlement Fund will be administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 2.34.)  The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Settling Parties). (*Id.* § 6.)  No payment less than $10 shall be distributed to any Settlement Class Member who is a Former Participant of the Plans. (*Id.* § 6.3.3.)   Any Net Settlement Amount remaining after the settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plans to defray administrative fees and expenses of the Plans; there will be no *cy pres* payment or reversion to Miami. (*See id.* § 6.11-6.12.)

In addition, Miami has agreed to certain non-monetary terms that will further benefit Settlement Class Members and the Plans more generally.  Specifically, within three years of the Settlement Effective Date, the Plans' fiduciaries will initiate a request for proposals ("RFP") for recordkeeping and administrative services for the Plans.  Additionally, Miami and the Plans'

fiduciaries have agreed that they will not agree to any increase in the current contractual fees paid by the Plans to Fidelity and TIAA for recordkeeping services those entities provide to the Plans during the three years following the Settlement Effective Date. (*Id*. §§ 10.1-10.3.)

### 2. <u>Retention of an Independent Fiduciary</u>.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement Agreement required the selection of an Independent Fiduciary to review the Settlement. (*Id*. § 3.1.) As discussed above, Gallagher was appointed for this purpose.  Gallagher's specific responsibilities were to (i) determine whether to approve and authorize the settlement of Released Claims on behalf of the Plans and (ii) determine whether the Settlement satisfies the requirements of the Prohibited Transaction Class Exemption 2003-39.  Ultimately, Gallagher reached the following conclusion:

> After a thorough review of the pleadings and interviews with the parties' counsel and the mediator, Gallagher has concluded that the Settlement was achieved at arms' length and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone. The fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation.

(Exhibit D, p. 4).

Before reaching this conclusion, Gallagher: (i) reviewed documents filed with the Court, including the Complaint and the Amended Complaint, the Motion to  Dismiss and the Court's order dismissing portions of the case, the Motion for  Preliminary Approval of Class Action Settlement, the Settlement Agreement and Notice,  the Order granting preliminary approval of the Settlement, and the Plaintiffs' Motion for Attorneys' Fees; (ii) interviewed Michael McKay of McKay Law, LLC, lead counsel  for Plaintiffs; (iii) interviewed Christopher Boran, from Morgan Lewis & Bockius, LLP, counsel for Defendants; and (iv) interviewed David Geronemus, the mediator.  (*See* Exhibit D, p. 1).

3.      **Attorneys' Fees, Costs and Service Award for Plaintiffs**.

Any Class Counsel Fees and Costs and/or Plaintiffs' Compensation the Court may award will be paid from the Gross Settlement Amount.  In a separate already-filed Motion (*see* Doc. 61), Class Counsel petitioned the Court for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses totaling $18,707.30. (*Id.* §§ 7.1-7.3.)

4.      **Notice and Objections**.

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provided for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement.  The Court-approved Settlement Notice was timely issued to Settlement Class Members.  Both the form and method of notice satisfied all due process considerations and meet the requirements under Rule 23(e)(1).

5.      **The Class Members' Reactions to the Settlement**.

The Settlement Administrator, American Legal Claims, sent the Court-approved Class Notice to the Settlement Class Members beginning January 26 through February 4, 2022. (Exhibit B, Salhab Dec., ¶¶ 5-8).

A total of 37,478 Settlement Notices were either mailed or emailed to members of the Settlement Class in accordance with the Court's Preliminary Approval Order.  (Exhibit B, Salhab Dec., ¶¶ 5-8).  The Settlement Notice informed Settlement Class Members that if they wish to object to the Agreement, they were required to provide a written statement to the Court and serve it upon Counsel for the parties postmarked by March 6, 2022.  (Exhibit B, Salhab Dec., ¶ 13).  To date, no objections have been made to the Settlement.  (*Id.*).  The undersigned also personally spoke with approximately 50+ class members (or more) who called with questions, all of whom supported the Settlement.  (*See* Exhibit C, Hill Decl., ¶¶ 27-28).  Given these facts, the Settlement Class Members' reactions are overwhelmingly positive.

8

II.     **MEMORANDUM OF LAW.**

A.      **Legal Standard.**

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co*., 559 F.2d 426, 428 (5th Cir. 1977).  A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id*. at 428; *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.  *See Bennett*, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp*., 417 F. App'x 843, 845 (11th Cir. 2011) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In addition, effective December 1, 2018, Rule 23 was amended to include certain final approval criteria for courts to consider, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and, finally, (D) the proposal treats class members

equitably relative to each other.  See Fed. R. Civ. P. 23(e)(2).  For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrates that the Settling Parties' proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

**B.**     **The Class Has Already Been Certified on a Preliminary Basis.**

Beginning with the issue of class certification, the Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(1).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling.

**C.**     **All Relevant *Bennett* Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

**1.**     **Likelihood of Success at Trial and Range of Possible Recovery (*Bennett* Factors 1–3).**

The first three *Bennett* factors—which include (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable—are unquestionably satisfied by the Settlement. Although "[a] determination of a reasonable settlement is not susceptible to a precise equation yielding a particular sum," *In re NetBank, Inc., Sec. Litig.*, No. 07-2298, 2011 WL 13176646, at *4 (N.D. Ga. Nov. 9, 2011), the Settlement represents an outstanding result considering both the strength of Plaintiffs' claims and the strength of Defendant's defenses. *See also Bennett*, 737 F.2d at 987 (citation omitted) ("[A] just result is often no more than an arbitrary point between competing notions of reasonableness.")  In fact, the Settlement requires Miami to pay $1.85 million for the benefit of the proposed Settlement Class.  It also requires Miami to take steps following the Settlement Effective Date to help ensure that the Plans' fees and service providers are prudently

10

managed for years into the future, while also ensuring the Plans will not see their contractual recordkeeping fees increase during at least a three-year period after the Settlement Effective Date.

Moreover, the $1.85 million recovery falls well within the range of reasonableness in this case, as it is a substantial percentage of the estimated recovery Plaintiffs' counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."). Absent this Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is heavily contested, and both sides would face considerable risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Settlement Class Members.

The $1.85 million cash payment represents a substantial recovery, and the result here is enhanced by further non-monetary benefits summarized above. These results are particularly beneficial to the Settlement Class in light of the risks posed by continued litigation, including the possibility of the Court finding no liability or the inability to prove damages. While Plaintiffs believe that the claims asserted against Miami are meritorious, they recognize that Miami strongly disagrees, and that Plaintiffs' claims present a number of substantial risks to establishing both liability and damages. There is no certainty that Plaintiffs would have avoided summary judgment, and even if they had, there is no certainty that they would have prevailed at trial. Miami mounted a vigorous defense to Plaintiffs' claims and have set forth multiple defenses—affirmative and otherwise—in their pleadings.

Additionally, with respect to the primary question of liability, Miami claims that it properly managed the Plans and had prudent processes in place to evaluate the Plans' investments and their

recordkeeping and administrative fees.  Miami claims that its choices were within the range of choices made by other similarly situated plan fiduciaries at the time they were made.  Miami also contends that Plaintiffs overstated the potential damages they could recover at trial, even assuming Plaintiffs could establish liability.

Notably, the only similar university case to be tried resulted in a verdict for defendants on all claims. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018).  Following appeal, the Second Circuit affirmed the trial judgment in its entirety. *Sacerdote v. New York University*, Case No. 18-2707-cv (2nd. Cir. August 16, 2021.)  As *Sacerdote* case clearly illustrates, Plaintiffs faced a substantial risk that they could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the class.

In sum, under the Settlement, the Settlement Class Members can quickly realize a portion of their alleged damages from the Qualified Settlement Fund and will also benefit from Miami's commitment to engage in an RFP for recordkeeping services to the Plans during the three years following the Settlement Effective Date, with a commitment not to agree to any increase in the contractual fees paid to the Plans' recordkeepers (Fidelity and TIAA) during that time.  Even if the amount is less than the minimum that could have been recovered through successful litigation, the settlement is fair, reasonable, and adequate.  For these reasons, the first three *Bennett* factors thus support final approval by the Court of the Settlement.

      **2.**    **<u>Complexity, Expense, and Duration of the Litigation (*Bennett* Factor 4), and Stage of Proceedings at Which Settlement Was Achieved (*Bennett* Factor 6).</u>**

The fourth *Bennett* factor, which requires an analysis of the complexity, expense, and duration of the litigation, also favors the Court granting final approval of the Settlement.  So does the sixth factor, the proceeding at which the settlement was achieved.  Below the two are analyzed together because they are interrelated.

"The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015).

This case did not settle soon after it was filed.  Rather, the Settlement was the product of hard-fought litigation, which included substantial motion practice, discovery, the retention of knowledgeable and qualified experts who performed damage analyses.  As set forth *supra*, Plaintiffs initiated discovery while motion practice was ongoing. They served document requests and interrogatories on Miami, along with a Fed. R. Civ. P. 30(b)(6) deposition notice.  Miami deposed each of the four named Plaintiffs.  Miami produced many documents central to the processes followed by the Plans' fiduciaries, which Class Counsel and their retained industry experts reviewed.  Plaintiffs also retained and worked with expert economic witnesses to develop damages models and to opine on alleged losses sustained by the named Plaintiffs and Settlement Class Members.

Additionally, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions.  Where there "is no evidence of any kind that the Settling Parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).  Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented.  It is recognized that the opinion of experienced and informed counsel supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983).

13

Importantly, the Settlement was the result of a successful mediation before a class-action mediator, and several months of further negotiations thereafter. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In sum, this litigation was highly complex, lengthy, and expensive for the Settling Parties. That expense was incurred after significant time was spent litigating, conducting discovery, and motion practice. The Settlement "offers the [Class Members] a certain and substantial recovery . . . in what would otherwise be an uncertain, lengthy, and expensive endeavor." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2008 WL 11319971, at *4 (N.D. Ga. Mar. 4, 2008). Therefore, the fourth and sixth *Bennett* factors strongly supports approval of the Settlement

### 3.    Substance and Amount of Opposition to Settlement (*Bennett* Factor 5).

The remaining *Bennett* factor Courts typically consider is the substance and amount of opposition to the settlement—the fifth *Bennett* factor. Because there is no opposition to the Settlement, this element is easily satisfied.

To be sure, "the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014). As described above, the Settlement Administrator provided notice of the Settlement to 37,478 Class Members. Not a single class member objected. This last *Bennett* factor supports the Court granting final approval of the Settlement. *See, e.g., Lipuma.*, 406 F. at 1319; *see also Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (granting final approval of class action settlement, nothing that "[n]o members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

**D.** **In addition to the *Bennett* Factors, All Rule 23(e) Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

Next, pursuant to 2018 amendments to Rule 23, when analyzing whether to grant final approval of a class action settlement, courts typically look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  Fed.R.Civ.P. 23(e)(2).  This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.** **The Class Representative and Class Counsel Have Adequately Represented the Class.**

The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Here, the four named Plaintiffs, who are the proposed Class Representatives, are participants in one or more of the Plans and allegedly suffered a pro rata loss because of Miami's alleged fiduciary breaches with regard to excessive administrative and recordkeeping fees, among other alleged problems.  Like other Settlement Class Members, the proposed Class Representatives seek to maximize the recovery to the Settlement Class through this litigation.  None of the Plaintiffs has any interest that is antagonistic to the claims of any Settlement Class Member. *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 348 (N.D. Ill. 2008).  The Plaintiffs' interests are, thus, fully aligned with the interests of Settlement Class Members.

Furthermore, the Plaintiffs have been and remain willing and able to take the required role in the litigation to protect the interests of those they seek to represent.  As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and,

further, that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004).  All four Plaintiffs have the required understanding and have demonstrated their commitment to this case by providing materials in discovery, submitting themselves to extensive questioning in depositions conducted during discovery, and consulting about key terms of the Settlement..

Finally, as discussed further below, Plaintiffs have retained counsel with significant experience in ERISA class actions.  When, as here, the Settlement Class is represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.  *See, e.g., Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011)("The view of the attorneys actively conducting the litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives.").  Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

2.     **The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the parties and their counsel.

Not only that, but the parties also used a highly respected mediator in this case, David Geronemus, Esq., who has extensive experience handling ERISA fiduciary-breach lawsuits like this one.  Mr. Geronemus' involvement as the mediator also supports finding the settlement fair,

reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment ("[T]he involvement of a neutral or court- affiliated mediator ... may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to the Class Members.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. The $1.85 million secured by Plaintiffs for the Settlement Class Members falls well within the range of reasonableness in this case. It is also a substantial percentage of the estimated recovery Plaintiffs' counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

17

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of Plaintiffs being unable to establish liability was also present because of the numerous defenses asserted by Defendant, including at both summary judgment and trial.  Each of these remaining phases of the litigation posed serious risks, which the Settlement allows Plaintiffs and the Settlement Class Members—and Defendant—to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, through this Settlement, the parties avoid the cost of protracted litigation.  The Settlement Class Members can quickly realize a portion of their possible damage claims from the Qualified Settlement Fund, even if the amount is less than what could have been recovered through successful litigation.  The Class Representatives support the Settlement, as do the Settlement Class Members—evidenced by the lack of objections.   Thus, the third Rule 23(e)(2) factor remains satisfied.

**4.**      **The Proposal Treats Class Members Equitably Relative to Each Other.**

Finally, the last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats Settlement Class Members equitably relative to each other.  More specifically, the Settlement Class Members who with an active account in one or more Plans as of August 31, 2021, will receive automatic settlement payments made directly to one or more of their accounts in the Plans.  And if any of these Settlement Class Members no longer have an active account at the time of payment, then they will receive their settlement payment by check.  Meanwhile, Settlement Class Members who do not have an active account in the Plans as of August 31, 2021, will simply submit a claim form, which will entitle them to receive a settlement payment by check provided their payment exceeds a minimum of $10.  The detailed "Plan of Allocation" summarized above is set forth in

Section 6 of the Settlement Agreement, which Plaintiffs incorporate by reference here.  (*See* Doc. 58-1, pp. 17-23, Article VI).  Thus, the final Rule 23(e)(2) factor is met.

**III.**   **CONCLUSION.**

      In sum, final approval of the parties' class action settlement by the Court is warranted.  No Class Member has objected to the settlement.  Defendant does not object to this Motion.  Plaintiffs respectfully submit that this Motion should be granted as a result.

      ***WHEREFORE***, Plaintiffs respectfully moves this Court to grant this Motion and enter the Proposed Order attached as Exhibit A.

**<u>Certificate of Compliance with Local Rule 7.1</u>**

  Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel

for Plaintiffs certified that Miami does not oppose this Motion.

  Dated this 22nd day of March, 2022.

             Respectfully submitted,

             /s/ *Brandon J. Hill*
             **LUIS A. CABASSA**
             Florida Bar Number: 053643
             **BRANDON J. HILL**
             Florida Bar Number: 0037061
             **WENZEL FENTON CABASSA, P.A.**
             1110 N. Florida Avenue, Suite 300
             Tampa, Florida 33602
             Main Number: 813-224-0431
             Facsimile: 813-229-8712
             Email: lcabassa@wfclaw.com
             Email: bhill@wfclaw.com
             ***Attorneys for Plaintiff and the Class***

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on this 22nd day of March, 2022, I caused a true and correct copy of

the foregoing to be filed using the Clerk of Court's CM/ECF system, which then caused a notice

of electronic filing on all Counsel of Record.

             /s/ *Brandon J. Hill*
             **BRANDO N J. HILL**